**GREATER NEW YORK HOSPITAL AS-SOCIATION, Long Island College Hospital and Maimonides Medical Center, on behalf of themselves and all other nonprofit hospitals in the Greater New York Hospital Association subject to the New York State Medicaid "demonstration project", Plaintiffs,**

**v.**

**Barbara B. BLUM, Commissioner of Social Services of the State of New York, David Axelrod, Commissioner of Health of the State of New York, and Joseph A. Califano, Jr., Secretary of the United States Department of Health, Education and Welfare, Defendants.**

No. 79 C 1833.

United States District Court,
E. D. New York.

Sept. 5, 1979.

Franklin S. Bonem, Proskauer, Rose, Goetz & Mendelsohn, New York City, for plaintiffs.

Robert L. Begleiter, Asst. U. S. Atty., Brooklyn, N. Y., for defendant Harris.

Arlene R. Silverman and Rosalind Fink, Asst. Attys. Gen. of the State of New York, New York City, for defendant Blum.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

Plaintiffs challenge the legality of a "demonstration project" instituted by defendants in 46 non-profit New York City hospitals. In 20 of these hospitals since March, 1979, a "demonstration team" of state nurses and doctors has reviewed all hospital claims for Medicaid reimbursement, taking over this function from the Professional Standard Review Organizations (PSROs), and, according to plaintiffs, disallowing hospital claims for reimbursement which would have been routinely approved by the PSROs. To stop this allegedly illegal demonstration project and the financial hardships it imposes, plaintiffs commenced this action on July 16, 1979 and moved for summary judgment 20 days later, August 7, 1979, pursuant to FRCP 56(a). The motion was argued August 22, 1979, and the last of defendants' papers were received by this court on August 30, 1979. For reasons set forth below, plaintiffs' motion for summary judgment is granted.

## FACTS

The facts are undisputed.[1]

Plaintiff Greater New York Hospital Association (Association) is a not-for-profit New York corporation composed of 74 non-profit hospitals in the New York City metropolitan area. It is the coordinating agency for all major non-profit voluntary and public hospitals in New York City. Plaintiffs Long Island College Hospital (LIC) and Maimonides Medical Center (Maimonides) are not-for-profit New York corporations, located in Brooklyn, New York, providing hospital care to Medicaid patients.

Defendant Barbara Blum is Commissioner of Social Services and head of the New York Department of Social Services, the department responsible for administering the Medicaid program in New York under the federal Social Security Act. Defendant David Axelrod is Commissioner of Health and head of the New York Department of Health, the department primarily responsible for the "demonstration project" complained of in this case. Defendant Patricia Harris[2] is Secretary of the United States Department of Health, Education and Welfare (HEW) and is the federal official ultimately responsible for the lawful administration of the Medicaid program.

In 1972, Congress amended Title XI of the Social Security Act, 42 U.S.C. § 1301 et seq., by enacting the Professional Standards Review Law, P.L. 92–603 Title II, § 249F(b), 42 U.S.C. § 1320c–§ 1320c–21. The statute was designed to establish effective professional peer review of the necessity and quality of medical care provided to individuals under various federal health care programs including the Medicaid program. The professional review in existence prior to the enactment of the Professional

Standards Review Law had not prevented widespread billing for unnecessary treatments, sometimes called "overutilization", which included unnecessary surgery and unjustifiable hospitalization, wasting public funds, and providing poor medical care. The Professional Standards Review Law was enacted to curb such abuses and "to promote the effective, efficient and economic delivery of health care services of proper quality for which payments may be made (in whole or in part) under [the Social Security Act]" 42 U.S.C. § 1320c. See generally, *Association of American Physicians and Surgeons v. Weinberger*, 395 F.Supp. 125, 127–28 (ND Ill.) aff'd. 423 U.S. 975, 96 S.Ct. 388, 46 L.Ed.2d 299 (1975); *Public Citizen Health Research Group v. Department of Health, Education and Welfare*, 449 F.Supp. 937, 938–39 (DC 1978).

To this end Congress authorized creation of the PSROs: non-profit organizations, ordinarily made up of physicians, whose main duty is to review reimbursement claims for medical services and items provided to Medicare and Medicaid patients, to determine whether:

(A) such services and items are or were medically necessary;

(B) the quality of such services meets professionally recognized standards of health care; and

(C) in case such services and items are proposed to be provided in a hospital or other health care facility on an inpatient basis, such services and items could, consistent with the provision of appropriate medical care, be effectively provided on an outpatient basis or more economically in an inpatient health care facility of a different type. 42 U.S.C. § 1320c–4(a)(1).

Congress also imposed a number of other duties on PSROs, such as approval of

---

1. At oral argument on August 22, 1979, the parties agreed that no facts were in dispute, save whether the amount of plaintiffs' alleged financial injuries was sufficient for jurisdictional purposes. After oral argument, by phone calls to chambers later confirmed by letter, each defendant conceded that plaintiffs' injuries exceeded the $10,000 jurisdictional minimum of 28 U.S.C. § 1331. Thus, there remain no material facts in dispute.

2. The complaint names Joseph Califano as defendant Secretary of HEW. Because Patricia Harris has replaced Joseph Califano as Secretary of HEW since commencement of the action, the parties in their papers have referred to Patricia Harris rather than Joseph Califano, and the court deems the complaint to be amended to reflect this change.

elective surgery, 42 U.S.C. § 1320c–4(a)(2)(A), approval of "any other health care service which will consist of extended or costly courses of treatment", 42 U.S.C. § 1320c–4(a)(2)(B), and the responsibility of recommending sanctions against health care practitioners who violate their obligations under the Social Security Act, 42 U.S.C. § 1320c–9(b).

The Professional Standards Review Law represents Congress's decision to let private medical specialists review claims for reimbursement under the Medicare and Medicaid programs. Since 1972, there has been frequent communication between HEW and New York State officials concerning the scope and boundaries of PSRO authority, as New York State has sought to retain some control over Medicare and Medicaid reimbursement claims. The history of these communications sheds considerable light on various provisions of the Professional Standards Review Law, and their application to defendants in the case at bar.

On March 31, 1976, Governor Carey signed into law significant legislative changes in the New York State Medicaid program. A memorandum, dated April 29, 1976 from the Acting Regional Commissioner of HEW to the Commissioner of the HEW Medical Services Administration, contains the following comment on these changes:

> It has been brought to our attention that sections 4, 6, and 8 of the legislation pose a potential conflict with Title XI, Part B of the Social Security Act—the Professional Standards Review Organization Legislation.
>
> Specifically, the legislation may be interpreted as delegating authority to the Commissioner of Health for determining admission, length of stay and medical necessity standards that the 1972 amendments to the Social Security Act * * * provided to Federally-funded PSROs. The PSRO Act clearly provides that such determinations are to be conclusively made by the PSROs; no payment of Federal funds may be made where the PSRO disapproves of such services subject to its

review, and so notifies the paying agency. Affidavit of Franklin Bonem, Ex. A.

The same New York amendments were the subject of a second memorandum dated July 7, 1976 from the Assistant General Counsel for the Public Health Division of HEW to the Assistant General Counsel of the Human Resources Division of HEW. Commenting on New York's authorization of a state review system parallel to the PSROs, the memorandum stated:

> [T]he establishment by a State of a peer review system for Medicaid services, does not necessarily result in a conflict with PSRO responsibilities. * * * However, once a PSRO assumes responsibility for a particular institution, the state's responsibility for review of the medical necessity, quality and level of Medicaid health care services is at an end. *Id.*, Ex. B.

In a memorandum dated February 1, 1977 from the Acting Regional Attorney of HEW to the Regional Director of Region II, it was stated that:

> [T]he recommended disapproval of the New York Plan Amendment is predicated upon explicit statutory authority, i. e. § 1154 of the Social Security Act. Section 1154 and § 1155 of the Social Security Act require that a conditional PSRO be the exclusive authority for determining whether items and services for which Medicaid reimbursement is claimed were medically necessary, as soon as the Secretary has determined that the PSRO in question is capable of making such determination.
>
> [O]nce the Secretary is satisfied that a PSRO has the capacity to perform utilization review determinations, he must permit them to do so. This determination is binding on the states by virtue of the Supremacy Clause, Article VI of the U.S. Constitution. Once the PSRO is actually performing this function, regardless of whether it is conditional or permanent, reimbursement for Title XIX purposes must be made only in accordance with its determinations. *Id.*, Ex. C.

Subsequent letters from the administrator of the Health Care Financing Administration of HEW to the Commissioner of Social Services of the State of New York restate HEW's disapproval of the New York State Medicaid amendments, insofar as they undermine PSRO review powers. *Id.*, Exs. E & F.

In October, 1977, Congress significantly amended the Professional Standards Review Law, 42 U.S.C. § 1320c *et seq.*, clarifying at many points the scope of authority of the PSROs. After these amendments, in March, 1978, the Administrator of the Health Care Financing Administration of HEW again had occasion to consider the legality of the New York Medicaid Plan Amendments:

> HEW's finding of PSRO competency is made upon conditional designation of the PSRO and approval of the PSRO's schedule for review. HEW is not free to revoke this finding absent subsequent evidence of incompetence. States are required under § 1158(c) [1159(c)] of the Social Security Act to accept for payment purposes medical necessity decisions of PSROs found competent by HEW.
>
> Where PSROs have been designated but have not yet begun review in particular hospitals:
>
> a. HEW may not unilaterally prevent the PSROs from beginning review in accordance with their assumption of review schedule.
>
> b. However, HEW and the PSROs could mutually agree to put off assumption of review in these hospitals if, on the whole, it could be said that the "number and type" of the PSROs' duties were expanded during its conditional period.
>
> Where PSROs are now doing reviews in hospitals:
>
> a. HEW could not unilaterally require the PSROs to stop, absent a finding of incompetence.

> b. HEW could not mutually agree with the PSROs that they would withdraw from review in those hospitals unless some reason, legitimate under the PSRO statute, could be found for doing so.
>
> c. The PSROs could not delegate review to the State Medicaid agency because the State agency is not a "health care facility or organization" under § 1155(e) of the Act. *Id.* at Ex. F.

Thus, from 1976 to 1978, in six instances, HEW construed the Professional Standards Review Law to prohibit New York State attempts to evade PSRO review. Nonetheless, in 1979 HEW approved a "memorandum of understanding" between the Kings County PSRO and New York State,[3] which contained the following addendum:

> This Memorandum of Understanding shall be subject to the terms and conditions of a demonstration project being jointly undertaken by the State, DHEW, and the PSROs in Erie, New York, Kings, Queens, and Bronx Counties. Affidavit of Harold Light, Ex. 3.

In late February 1979, LIC received a memorandum from the New York State Health Department announcing the start of the "demonstration project". The memorandum, dated February 22, 1979, states that the purposes of the project are:

> (1) to measure the impact of the PSRO review program on the necessity and appropriateness of care received by hospitalized Medicaid patients; (2) to measure the impact of the PSRO review program on the State expenditures for hospitalized Medicaid patients; (3) to foster the efficient and effective conduct of the hospital utilization review process in New York State through identification and communication to the PSROs of areas of concern which emerge as a result of the monitoring activities.

---

**3.** A Memorandum of Understanding was required by 42 U.S.C. § 1320c–2, enacted in 1977 as part of the amendments to the Professional Standards Review Law. The Memorandum of Understanding between New York State and the Kings County Health Care Review Organization (referred to informally as the Kings County PSRO) is believed to be substantially identical to the Memorandum of Understanding signed by other PSROs in the metropolitan area.

The monitoring program will meet the above objectives through periodic visits to PSRO hospitals. Review of selected hospital medical records will consider the necessity and appropriateness of admission of each day of stay. OHSM [Office of Health Systems Management] monitors will use State criteria and standards specifically developed for use in the Medicaid program.

The key variable to be assessed in the program is the number of days certified for payment by the PSRO in non-delegated facilities or by the Utilization Review Committee in delegated facilities. A basic assumption in this approach is that only days that are necessary and appropriate should be certified for Medicaid payment. *Id.*, Ex. 4.

In the beginning of March, 1979, state nurses, recruited by newspaper advertisements, arrived at LIC, Maimonides, and 18 other non-profit New York City hospitals involved in the demonstration project. At about the same time, the hospitals received the "New York State/PSRO Demonstration Project Manual", which explains that state nurses ("demonstration nurses") shall review the medical necessity, quality and appropriateness of hospital Medicaid services. According to the Manual, the nurse assigned to a case never sees or talks to the patient, the attending physician or any other person connected with the hospital. Her sole activity is to read the patient's chart, file a report unavailable to the hospital, and fill out certain forms. The nurse's recommendations are reviewed by a doctor employed by the state who never meets with patients or hospital staff, confining himself to the nurse's report and the patient's chart. The doctor approves or disapproves the hospital's reimbursement claim, and the hospi-

tal may then appeal this decision to another state doctor, who issues a final decision without holding a hearing of any sort.

Put most simply, the demonstration project has selected 20 hospitals in which state-employed nurses and doctors have taken over review responsibility from the private physicians on the PSROs. In these 20 hospitals, for the length of the demonstration project, the state will reimburse only those claims approved by the state's own "demonstration teams". At the end of the project, the state will evaluate the effectiveness of the PSROs by comparing reimbursement rates in hospitals under PSRO review versus those under review by the state "demonstration teams".

Since March 1979 when the project began, plaintiffs claim to have suffered significant financial damages at the hands of the parsimonious demonstration teams.[4] Although the exact amount is not clear,[5] defendants now concede that the financial losses of LIC and Maimonides each surpass the $10,000 jurisdictional minimum imposed by 28 U.S.C. § 1331. There is no dispute that plaintiffs' losses continue to mount each day the demonstration project continues, losses whose retroactive recovery from the state is barred by the Eleventh Amendment.

On February 9, 1979 the executive vice president of Maimonides by letter requested exclusion from the demonstration project, citing serious financial problems at the hospital. By letter dated March 9, 1979, HEW's regional director rejected Maimonides' request. In light of this rejection, and a letter from the New York State Department of Health to the president of plaintiff Greater New York Hospital Association stating that hospital participation in the

---

**4.** Plaintiffs calculate their damages as the difference between claims allowed by the state demonstration teams and claims which would be allowed by the PSROs (which have continued for their own purposes to review reimbursement claims in the 20 affected hospitals despite the transfer of review power to the demonstration teams).

**5.** Plaintiffs originally estimated their losses for the first five months of the demonstration project at over $300,000 for LIC and over $200,000 for Maimonides. Plaintiffs' Memorandum of Law at 4–5. After these figures were challenged, plaintiffs submitted revised estimates of $142,000 for LIC and $112,708 for Maimonides. Letter from plaintiffs' attorney to the court dated August 24, 1979, filed as document No. 20.

demonstration project would be mandatory, LIC did not request an exemption. Instead, plaintiffs brought this suit, alleging that the demonstration project is unlawful, and seeking declaratory and injunctive relief against its continuance.

## DISCUSSION

■ At the outset defendant HEW challenges this court's jurisdiction over LIC, which admittedly did not request a hardship exemption from the demonstration project. HEW argues that this "failure to exhaust administrative remedies" requires dismissal for lack of jurisdiction, or at least deferral pending administrative determination of plaintiffs' complaints. This is the sort of "wooden application of the exhaustion doctrine" which has been condemned by the Second Circuit, *Plano v. Baker*, 504 F.2d 595 (CA2 1974). In a letter referred to above, the New York Health Department stated that all hospitals selected "must participate in the project." Plaintiffs' reply memorandum, addendum 3. Prior to the filing of the complaint, the only two requests made for exemption had been denied. In such circumstances a litigant may by-pass futile administrative remedies and seek immediate judicial relief. *Diapulse Corp. v. FDA*, 500 F.2d 75, 77–78 (CA2 1974); *Wolff v. Selective Service Local Board No. 16*, 372 F.2d 817 (CA2 1967).

On a second preliminary issue, both defendants argue that plaintiff hospitals lack standing to sue, because plaintiffs:

do not fall within the zone of interests to be protected by the challenged statute. * * * Title XIX was enacted in order to allow states to better provide medical care for the needy * * *. It is not a program enacted for the benefit of the hospitals or the health care industry. Accordingly, plaintiffs cannot claim to be within the zone of interests protected by the challenged statute. Brief of defendant HEW, FN at 23.

The state brief takes the point one step further, arguing that the interests of plaintiffs and Medicaid patients are not merely distinguishable, but adverse:

[F]ar from a confidential relationship with Medicaid recipients, plaintiffs' primary concern is with the financial success of their hospital operations. Indeed, the services for which they seek compensation may have been totally unnecessary and contrary to the best of interests (sic) of the Medicaid patient, i. e., unnecessary elective surgery, prolonged and psychologically damaging hospital stays. Brief of state defendants at 4–5.

■ These arguments erroneously assume that the hospitals' standing derives from the standing of Medicaid patients. Hospitals, as providers of Medicaid services, have a statutory right to reimbursement, 42 U.S.C. § 1396a(a)(13)(D), and, as providers of Medicaid services, have standing to protect their statutory right in the courts. *National Union of Hospital and Health Care Employees v. Carey*, 557 F.2d 278, 280–81 (CA2 1977). As Judge Lasker wrote in a recent case involving another of HEW's frequent challenges to hospital standing:

Because, under the Medicaid Act, hospitals are reimbursed by state plans as approved and reviewed by the Secretary, they are vitally concerned with the approval procedure, and therefore, are more than "arguably within the zone of interests sought to be protected by" the Act's provision for pre-implementation review. *Hospital Association of New York State v. Toia*, 438 F.Supp. 866, 870 (SDNY 1977)

The challenges to plaintiffs' standing are without merit.[6]

Turning to the merits of this controversy, the question is whether the New York demonstration project is contrary to federal law, specifically the Professional Standards Review Law, as amended (1977); if so, it violates the Supremacy Clause of the federal constitution. According to plaintiffs, the demonstration project violates federal law

6. The court assumes that HEW no longer presses its argument that plaintiffs lack standing due to absence of actual economic harm.

by illegally suspending PSRO power to review claims for Medicaid reimbursement submitted by LIC, Maimonides, and other demonstration hospitals. According to defendants, withdraw of PSRO review power is authorized by various provisions of the Social Security Act. The court will first consider the statutory authority offered by HEW, and then the statutory authority offered by the state defendants.

## STATUTORY AUTHORITY OFFERED BY HEW

First, HEW cites two provisions, 42 U.S.C. § 1320c–7(c) and 42 U.S.C. § 1320c–2, whose interaction is said to provide authority for withdrawal of PSRO review power over demonstration hospitals:

Although PSRO determinations are conclusive, they are conclusive only with respect to those "specified types of health care services or *specified providers* * * of such services" that the Secretary has found the PSRO is competent to review. 42 U.S.C. § 1320c–7. * * *

A conditionally designated PSRO's authority *is* exclusive in the hospitals where it is permitted to review. However, a conditionally designated PSRO has no authority to review medical care in those hospitals where it has not been officially placed. In the latter case, review is conducted "in a manner otherwise provided by law." 42 U.S.C. § 1320c–2. [footnote omitted].

Thus it is clear that the provision making PSRO determinations conclusive, 42 U.S.C. § 1320c–7(c), does not mandate that a conditionally designated PSRO review all hospitals in its area. That provision, therefore, does not preclude alternative methods of review such as those conducted under the demonstration project. Brief of HEW at 10, 14–15. (emphasis added by HEW).

Stripped to its essentials, HEW's argument is this. Under 42 U.S.C. § 1320c–7(c), review by conditionally designated PSROs may be restricted to "specified types of health care services or *specified providers.*" If a PSRO is given review power over only "specified providers", then it lacks power over other providers, and under 42 U.S.C. § 1320c–2, claims by other providers "shall be reviewed in the manner otherwise provided for under law." Thus, HEW argues, review power over LIC and Maimonides may be taken from the conditionally designated Kings County PSRO and given to the on-site demonstration teams for review in a manner "otherwise provided for under law." [7]

█ To state this argument is to show its flaw. Even if we assume that the statute allows the state to limit PSRO review to "specified providers", and that the state may review claims of other hospitals in a different manner, this says nothing about the state's power to *withdraw* hospitals from PSRO review. As HEW explained in its letter dated March 23, 1978, quoted above, one set of rules applies "when PSROs have been designated but have not yet begun review in particular hospitals", and a different and stricter set of rules applies "where PSROs are now doing reviews in hospitals." In the first case, "HEW and the PSROs could mutually agree to put off assumption of review." In the latter case, "HEW could not mutually agree with the PSROs that they would withdraw from review in these hospitals unless some reason, legitimate under the PSRO statute, could be found for doing so."

The Professional Standards Review Law as amended (1977) does provide a statutory mechanism for withdrawal of PSRO review power. If a state alleges and the Secretary makes a finding that a PSRO's determinations have caused "an unreasonable and detrimental impact on total State expenditures * * * and on the appropriateness of care received by individuals," the Secretary is empowered to suspend "such organization's authority in whole or in part under § 1320c–7(c) of this title to make conclusive

---

7. There is no dispute that the conditionally designated Kings County PSRO had been given review authority over plaintiffs LIC and Maim- onides before the review power was suspended by the New York demonstration project.

determinations for purposes of payment * * *." 42 U.S.C. § 1320c–20(d)(3)(A). As an alternative method of withdrawing PSRO review power, the Secretary may cancel the agreement with a PSRO before the expiration of the normal term,

> but only after the Secretary has determined (after providing such organization with an opportunity for a formal hearing on the matter) that such organization is not substantially complying with or effectively carrying out the provisions of such agreement. 42 U.S.C. § 1320c–1(d)(2).

Under these sections it is possible to withdraw the review power of a PSRO, whether conditionally or fully designated. However, that was not done here, and to do so would require a stronger showing than would be necessary to initially limit PSRO review power under 42 U.S.C. § 1320c–7(c) or § 1320c–2.

■ HEW seeks to bolster its argument with an affidavit, and attached "phase-in" schedule, showing that "hospitals in Brooklyn were brought under the jurisdiction of the Kings County [PSRO] over an extended period of time." Affidavit of Nancy Sheffler, filed August 28, 1979. Presumably, HEW means to show again that the initial review power of PSROs may be limited. The affidavit and phase-in schedule fail, however, to show that hospitals may be "phased-out" of PSRO review as easily as they are phased-in. On the contrary, the slow phase-in of PSRO power reflects Congress's intention that power, once given, may be withdrawn from the PSROs only with great difficulty and according to the statutory standards. The general purpose of the Professional Standards Review Law is to put review power in the hands of private medical specialists, beyond the reach of state and federal officials; this purpose is accomplished by slow phase-in and difficult withdrawal. HEW's argument that withdrawal can be accomplished more easily through 42 U.S.C. § 1320c–7(c) and § 1320c–2 is without merit.

HEW advances a second argument to support withdrawal of PSRO review power:

> [T]he provision mandating conclusive determination, 42 U.S.C. § 1320c–7(c), only applies to hospitals where the Secretary has decided that the PSRO may assume responsibility. When, by Memorandum of Understanding approved by the Secretary, the PSRO's authority over a hospital is withdrawn, it cannot be said that a PSRO has delegated its authority to make conclusive determinations.
>
> In withdrawing responsibility from the PSRO, the Memorandum of Understanding, with the Secretary's approval, delineates the relationship between the PSRO and the State and specifies the circumstances under which a PSRO's determination are (sic) conclusive. This, of course, is precisely the function of a Memorandum of Understanding under the statute, 42 U.S.C. § 1320c–20(a)(1), see also, § 1320c–7(c). Brief of HEW at 16–17.

■ Like HEW's first argument, the second assumes that the authority to limit PSRO power (by "delineating the relationship between the PSRO and the State") implies the authority to withdraw PSRO review power once granted. As explained above, the Professional Standards Review Law sets forth strict and specific methods for withdrawal of PSRO review power. These methods cannot be circumvented by a Memorandum of Understanding, whose statutory function is "to delineate", not eliminate, PSRO review. 42 U.S.C. § 1320c–20(a)(1). Nor can the PSRO delegate its review power to the state through the Memorandum of Understanding: the State Medicaid authority is not a "health care facility or organization" under 42 U.S.C. § 1320c–4(e)(1). The Memorandum of Understanding between the state and the Kings County PSRO cannot authorize the withdrawal of PSRO review power under the New York Demonstration Project.

## STATUTORY AUTHORITY OFFERED BY THE STATE DEFENDANTS

The first statutory argument of the state defendants resembles an argument advanced by HEW:

The Kings County PSRO is a conditional PSRO which has not yet received official designation by the Secretary of HEW. Since the PSRO is operating during a trial period, the Secretary in a proper exercise of his authority, has limited the review being done by the Kings County PSRO, authorizing review of certain Medicaid reimbursement by the demonstration project teams. 42 U.S.C. § 1320c–3. (this point is developed in the memorandum submitted by the Secretary of the Department of Health, Education and Welfare). Brief of state defendants at 5–6.

■ Like HEW, the state argues that review of conditionally designated PSROs may be withdrawn without recourse to the strict provisions of 42 U.S.C. § 1320c–20(d)(3)(A) or § 1320c–1(d)(2). Unlike HEW, the state cites as authority 42 U.S.C. § 1320c–3, entitled "Trial period for Professional Standards Review Organization—Initial Designation by Secretary; prerequisites." The state focuses on the conditional designation of the Kings County PSRO, arguing that the Secretary, "in a proper exercise of his authority", may summarily withdraw review power from conditionally designated PSROs.

The terms of 42 U.S.C. § 1320c–3 fail to support the state's position. The crucial provision is subsection (b) which reads in pertinent part as follows:

During any such trial period (which may not exceed 48 months except as provided in subsection (c) of this section) the Secretary may require a Professional Standards Review Organization to perform, *in addition to review of health care services provided by or in institutions,* only such of the duties and functions required under this part of Professional Standards Review Organization as he determines such organization to be capable of performing.

■ The 1977 amendments to this section added, among other things, the phrase underlined above. Explaining this addition, the committee reports state that it was meant to "clarif[y] the requirement of

present law that PSROs must assume responsibility for review of all institutional services (including ancillary services) during the conditional period." S.Rep.No.95–453, H.R.Rep.No.95–393(II), 95th Cong. First Sess., *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 3039, 3059. Though different in certain ways, conditionally designated PSROs and those fully designated are identical in their review power over "health care services provided by or in institutions," once such power is granted. This identity is consistent with 42 U.S.C. § 1320c–7(c), which gives conclusive effect to review by PSROs "whether designated on a conditional basis or otherwise". Once review power is granted, whether the PSRO is conditionally or fully designated, the Secretary may not *withdraw* its review power without adherence to the strict provisions of 42 U.S.C. § 1320c–20(d)(3)(A) or § 1320c–1(d)(2).

The state's second argument is that:

[C]ontrary to the assertions of plaintiff, the demonstration project challenged at bar is authorized by 42 U.S.C. § 1315 (a)(1). This provision permits the Secretary to waive compliance with any of the requirements of the medicaid statutes. Brief of state defendants at 6.

Section 42 U.S.C. § 1315(a)(1) reads as follows:

[T]he secretary may waive compliance with any of the requirements of §§ 302, 602, 802, 1202, 1352, 1382, 1396a, 1397a, 1397b, or 1397c of this title, as the case may be, to the extent and for the period he finds necessary to enable such State or States to carry out such project \* \* \*.

Conspicuously absent from the list of waivable provisions is any section of the Professional Standards Review Law, 42 U.S.C. § 1320c *et seq.* This omission takes on added meaning in light of the 1977 amendments, which added § 1397a, b & c to the waivable sections but continued to omit any reference to 42 U.S.C. § 1320c *et seq.*

In a letter already referred to, HEW had stated its position that:

The [New York demonstration] project cannot properly be called a demonstration

project since it is not being conducted under authority of § 1115 of the Social Security Act, or any other demonstration project authority. Affidavit of Franklin Bonem, Ex. F.

Adhering to this position, which seems compelled by the terms of the statute, HEW did not cite 42 U.S.C. § 1315(a)(1) as authority in its memorandum of law. The court concludes that 42 U.S.C. § 1315(a)(1) does not authorize withdrawal of PSRO review power under the New York "demonstration project".

Having considered and rejected each statutory argument advanced by defendants, the court is led to the conclusion that the New York demonstration project as applied to LIC and Maimonides is in conflict with the Social Security Act, and therefore, in violation of the Supremacy Clause of the federal constitution.

### CONCLUSION

For reasons set forth above, plaintiffs' motion for summary judgment is granted. The New York demonstration project applied to LIC and Maimonides [8] is declared to be in violation of the Social Security Act and the Supremacy Clause of the United States Constitution. Defendants are forthwith enjoined from further violations of the Social Security Act and the federal constitution. Plaintiffs shall submit a proposed final judgment, on notice, within seven days from the date of this order.

SO ORDERED.

---

8. Because plaintiffs did not move for class action certification in connection with the summary judgment motion, the court declines to consider the class action allegations of the complaint, and grants relief only to plaintiffs LIC and Maimonides. The parties neither argued not briefed the question of whether relief

is available to plaintiff Greater New York Hospital Association as representative for the other New York City hospitals involved in the demonstration project. Since claims on behalf of the Association have not been pressed by plaintiffs on this motion, the court declines to consider such claims.