GREATER NEW YORK HOSPITAL ASSOCIATION et al., Plaintiffs-Appellants,

v.

Barbara B. BLUM, Commissioner of Social Services of the State of New York et al., Defendants-Appellants.

Nos. 906, 940, 1034, Dockets 79–6242, 79–6244 and 80–6032.

United States Court of Appeals, Second Circuit.

Heard May 28, 1980.

Decided Oct. 29, 1980.

Robert L. Begleiter, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Harvey M. Stone, Asst. U. S. Atty., Brooklyn, N. Y., on brief), for defendant-- appellant Harris.

Alan W. Rubenstein, Albany, N. Y. (Robert Abrams, Atty. Gen., Shirley Adelson Siegel, Sol. Gen., Albany, N. Y., on brief), for defendants- appellants Blum and Axelrod.

Franklin S. Bonem, New York City (Robert M. Kaufman, Allan E. Mayefsky, Maxine A. Paul, Proskauer Rose Goetz & Mendelsohn, New York City, on brief), for plaintiffs--appellees and plaintiffs–intervenors– appellees.

Edwin M. Mulholland, New York City, for Interboro General Hospital, plaintiff–intervenor--appellee.

Before FEINBERG, Chief Judge, NEWMAN and KEARSE, Circuit Judges.

NEWMAN, Circuit Judge:

This case concerns the lawfulness under the Social Security Act of a demonstration project designed to test the relative effectiveness of various procedures for the review of hospital care and other services provided to Medicaid recipients. The project assigned the State of New York review authority for a two -year period over the Medicaid reimbursement claims of 20 New York City hospitals. The United States District Court for the Eastern District of New York (George C. Pratt, Judge) found the project to be in violation of the Social Security Act because, in the District Court's view, the Act vested review authority in an administrative arrangement that precluded review of claims by the State. *Greater New York Hospital Ass'n v. Blum*, 476 F.Supp. 234, 244 (E.D.N.Y.1979). We reverse.

Resolution of the narrow issue of statutory interpretation presented by this appeal requires some understanding of prior and current provisions concerning federally reimbursed health care claims. In 1972, Congress enacted the Professional Standards Review Law, Pub.L. No. 92–603, Title II, § 249F(b), 86 Stat. 1429 (1972) (current version at 42 U.S.C. §§ 1320c–1320c–22 (1976 & Supp. II 1978)), primarily as a means of seeking to control the burgeoning costs of federal health care programs, including Medicaid.[1] See *Ass'n of American Physi-*

---

1. The stated purpose of the statute is to assure that the health care "services for which pay-

ment may be made under this chapter will conform to appropriate professional standards

*cians & Surgeons v. Weinberger,* 395 F.Supp. 125, 140 (N.D.Ill.), *aff'd,* 423 U.S. 975, 96 S.Ct. 388, 46 L.Ed.2d 299 (1975). The statute, which has been amended on several occasions since its enactment, provides for the delegation of review authority over Medicaid and Medicare reimbursement claims to so–called "Professional Standards Review Organizations" ("PSROs"), each of which ordinarily will be a nonprofit association composed of a "substantial proportion" of the physicians in the geographical area within which the PSRO functions, 42 U.S.C. § 1320c–1(b)(1)(A). The duties of each PSRO include the responsibility to determine (1) whether the particular health care services and items provided to a Medicaid or Medicare patient "are or were medically necessary," (2) whether the "quality of such services meets professionally recognized standards of health care," and (3) whether "in case such services and items are proposed to be provided ... on an inpatient basis, such services and items could ... be

for the provision of health care and that payment for such services will be made–
(1) only when, and to the extent, medically necessary, as determined in the exercise of reasonable limits of professional discretion; and
(2) in the case of services provided by a hospital or other health care facility on an inpatient basis, only when and for such period as such services cannot, consistent with professionally recognized health care standards, effectively be provided on an outpatient basis or more economically in an inpatient health care facility of a different type, as determined in the exercise of reasonable limits of professional discretion.
42 U.S.C. § 1320c. *See Szekely v. Florida Medical Ass'n,* 517 F.2d 345, 349 (5th Cir. 1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976) ("PSRO system was designed to deal with hospitals and physicians who abuse the program or who provide not only unnecessary but positively harmful services"); *Lang v. Berger,* 427 F.Supp. 204, 211 (S.D.N.Y.1977) ("The purpose of [the Professional Standards Review Law] ... is to limit the unnecessary and improper use of medical facilities and medical care under, *inter alia,* the Medicaid program").

2. PSRO's are also authorized to make advance determinations concerning the necessity of "any elective admission to a hospital, or other health care facility," or "any other health care service which will consist of extended or costly courses of treatment ...." 42 U.S.C. § 1320c–

effectively provided on an outpatient basis or more economically in an inpatient health care facility of a different type." 42 U.S.C. § 1320c–4(a)(1).[2]

As originally enacted, the statute expressly prohibited the expenditure of federal funds to reimburse claims for health care services or items "disapproved" by a PSRO, but left ambiguous the status of claims for services or items "approved" by a PSRO. 42 U.S.C. § 1320c–7(a). HEW consistently construed this and other provisions of the Professional Standards Review Law as if they rendered "conclusive" all PSRO determinations, both those approving and disapproving the services or items giving rise to a reimbursement claim. See *Greater New York Hospital v. Blum, supra,* 476 F.Supp. at 237; 42 Fed.Reg. 4259–60 (1977). "Conclusive," under the statute, in substance means immune from state agency review, but nonetheless subject to federal agency and federal court review. 42 U.S.C.

4(a)(2). In addition, PSRO's are charged with the responsibility of recommending sanctions against health care providers who fail to meet their obligations under the Professional Standards Review Law. 42 U.S.C. §§ 1320c–6, 1320c–9(b)(1).

Under the terms of the statute, assumption of responsibility by a PSRO occurs in defined stages. Initially, designation of an organization as the PSRO for an area is on a conditional basis only. 42 U.S.C. §§ 1320c–1(a), 1320c–3(a). During this trial period, the number and types of duties delegated to the organization are to be "progressively increased as the organization becomes capable of added responsibility." 42 U.S.C. § 1320c–3(b). The conditional designation cannot be lifted until the Secretary of Health and Human Services (formerly the Secretary of HEW) determines that the organization is "substantially carrying out in a satisfactory manner, the activities and functions required of [PSROs] with respect to the review of health care services provided by or in institutions ... and, in addition, review of such other health care services as the Secretary may require." 42 U.S.C. § 1320c–3(b). *See* 42 U.S.C. § 1320c–1(a) (Secretary shall enter an agreement with organization designating it as the PSRO for an area if, "on the basis of its performance ... the Secretary determines that such organization is capable of fulfilling, in a satisfactory manner, the obligations and requirements for a [PSRO]").

§ 1320c–8. Despite HEW's view, New York and other states took the position that the statute allowed them to refuse to pay reimbursement claims their state agencies thought were unwarranted, even though a PSRO had expressly approved the underlying services. In 1977, Congress amended the statute to clear up the ambiguity in the original language. Medicare–Medicaid Anti–Fraud and Abuse Amendments, Pub.L. No. 95–142, § 5, 91 Stat. 1183 (1977). As amended, the statute provides that all determinations by a PSRO concerning the medical necessity and quality of particular health care services and items are binding upon the states and "conclusive" for purposes of payment of reimbursement claims. 42 U.S.C. § 1320c–7(c).[3] This provision was expressly made contingent on several sections,[4] including § 1320c–20(a)(1), the provision at issue in this case.

Section 1320c–20(a)(1) provides, in pertinent part, as follows:

> ... [N]o determination made by a Professional Standards Review Organization [concerning the medical necessity and quality of health care and services and items] shall constitute conclusive determinations under section 1320c–7(c) of this title for purposes of payment ... *unless such organization has entered into a memorandum of understanding*, approved by the Secretary, with the single State agency responsible for administering or supervising the administration of the

State plan ... for the State in which the organization is located ... *for the purpose of delineating the relationship between the organization and the State agency* and of providing for the exchange of data or information, and for administrative procedures, coordination mechanisms, and modification of the memorandum at any time that additional responsibility for review by the organization is authorized by the Secretary. [Emphasis added].

 As contemplated by § 1320c–20(a)(1), the PSRO responsible for Kings County, New York, entered into a "memorandum of understanding" with the State of New York in early 1979. The agreement, which was subsequently approved by the Secretary of HEW, detailed the responsibilities of the PSRO and expressly provided that once the PSRO assumes review responsibility for a particular facility, the State will cease making determinations of medical necessity and appropriateness of services for purposes of payment.[5] Appended to the agreement was the following qualification:

> This Memorandum of Understanding shall be subject to the terms and conditions of a demonstration project being jointly undertaken by the State [of New York], [the Secretary of HEW], and the PSRO's in Erie, New York, Kings, Queens, and Bronx Counties.

---

**3.** Section 1320c–7(c) provides, in pertinent part:

> Where a Professional Standards Review Organization (whether designated on a conditional basis or otherwise) has been found competent by the Secretary to assume review responsibility with respect to specified types of health care services or specified providers or practitioners of such services and is performing such reviews, determinations made pursuant to paragraphs (1) and (2) of section 1320c–4(a) of this title in connection with such reviews *shall constitute the conclusive determination on those issues* (subject to sections 1320c–8 and 1320c–20(a)(1) and (d)(3) of this title) for purposes of payment under this chapter, and no reviews with respect to those determinations shall be conducted, for purposes of payment, by ... single State agencies administering or supervising the ad-

ministration of State plans approved under subchapter XIX of this chapter. [Emphasis added].

**4.** The conclusiveness of the PSRO's determinations is also contingent upon the right of health care providers and practitioners to appeal adverse determinations, 42 U.S.C. § 1320c–8, and the right of the Secretary, upon the petition of a State agency, to suspend the PSRO's authority, in whole or part, where it is determined that the PSRO's review determinations "have caused an unreasonable and detrimental impact on total State expenditures," 42 U.S.C. § 1320c–20(d)(3).

**5.** Similar agreements apparently were signed by 16 other PSROs operating in other parts of New York State.

Under the terms of this demonstration project, conclusive review authority over Medicaid reimbursement claims in 20 New York City hospitals was assigned to the State for a two–year period. The purpose of this arrangement was to provide a means of testing the relative effectiveness of the State and PSRO systems of review.

In July, 1979, two Kings County hospitals involved in the project and the Greater New York Hospital Association, brought this suit against New York State officials and the Secretary of HEW to challenge the project's legality. They contended that the transfer of review authority over Medicaid claims incurred at the plaintiff hospitals from the Kings County PSRO to the State of New York was impermissible under the Professional Standards Review Law.[6] The District Court upheld this contention and enjoined operation of the project at the plaintiff hospitals and at 15 other hospitals in New York City, whose operators had intervened.[7]

On appeal, the State and Federal defendants contend that the project is authorized by § 1320c–20(a)(1).[8] They point out that this subsection requires a PSRO, as a condition of exercising its conclusive review au-

thority, to enter into a memorandum of understanding for the purpose of "delineating the relationship" between the PSRO and the State. The memorandum of understanding that satisfied that condition with respect to the Kings County PSRO was specifically made subject to the terms of the challenged demonstration project, which accorded the State review authority for two years. The Kings County PSRO, it is urged, thus acquired its conclusive review authority over most hospitals within its area conditioned upon an exception for the exercise of review authority by the State in those hospitals within the demonstration project.

Whether § 1320c–20(a)(1) can be construed in this manner to authorize the demonstration project is a close question, to which neither the terms of the statute nor the legislative history provide a clear answer.[9] The District Court surely adopted a plausible construction of the subsection by emphasizing that the memorandum of understanding contemplated by the provision is to serve the purpose of "delineating" the relationship between the PSRO and the State. In the District Court's view, the demonstration project exceeded the subsec-

---

**6.** The conditionally–designated Kings County PSRO had been found competent to assume Medicaid review authority over the plaintiff–hospitals and was actually performing its review responsibilities in those hospitals prior to the start of the demonstration project. *See Greater New York Hospital Ass'n v. Blum, supra,* 476 F.Supp. at 241 n.7. For purposes of this appeal, we will assume that HEW was correct in representing that the other hospitals involved in this suit were also subject to PSRO review prior to transfer of review authority to New York State.

**7.** According to affidavits submitted to the District Court, the 10 plaintiff–intervenors operate 15 of the 20 New York City hospitals, which, under the terms of the demonstration project, were subject to review by the State.

**8.** As a separate ground for urging reversal of Judge Pratt's judgment, appellants contend that plaintiff hospitals do not have a private cause of action to challenge the demonstration project. Appellees contend, however, that the cause of action question was not raised below and therefore should not be considered on appeal. In addition, appellees argue, on the merits, that the hospitals do have a cause of action

under both the Professional Standards Review Law and 42 U.S.C. § 1983. Because we ultimately decide in favor of the appellants on other grounds, we need not resolve these questions. *See Burks v. Lasker,* 441 U.S. 471, 476 n.5, 99 S.Ct. 1831, 1836 n.5, 60 L.Ed.2d 404 (1979) ("question whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided").

**9.** Apart from the issue of construing § 1320c–20(a)(1), appellees contend that the project is barred by the terms of §§ 1320c–7(c) and 1320c–4(a). Section 1320c–7(c) makes the determinations of a PSRO "conclusive," but also explicitly makes that conclusiveness subject to § 1320c–20(a)(1). Section 1320c–4(a) requires PSROs to discharge their responsibilities "Notwithstanding any other provision of law," but also "consistent with the other provisions of this part," which includes § 1320c–20(a)(1). Thus both of appellees' claims based on other provisions of the statute require resolution of the basic issue of whether § 1320c–20(a)(1) authorizes the challenged project.

tion's scope because, as to the hospitals within the project, the authority of the PSRO is not delineated, it is eliminated. On the other hand, it is at least equally plausible to consider the relationship between the PSRO and the State to be properly "delineated" by an arrangement that makes the PSRO's authority generally effective, subject only to an exception for a limited period of time and a limited number of hospitals. It may well be that under the guise of delineating relationships, the states cannot conclude memoranda of understanding that allocate conclusive review authority between PSRO's and state agencies simply for the purposes of preserving substantial state authority. But the project excepted by the memorandum of understanding in this case is not part of a broad state attempt to retain authority that Congress has specified is generally to be shifted to qualified PSRO's. This project is an experiment, limited as to time and place and specifically designed to determine whether the PSRO mechanism is effective compared to state authority. We do not believe Congress would be at all reluctant to see § 1320c–20(a)(1) applied to permit a demonstration project undertaken to assess the most effective way of containing costs. Moreover, we are persuaded to adopt a construction that permits this demonstration project because this interpretation is supported by the federal agency charged with administering the statute. See *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). HEW's views are especially persuasive in a case such as this where the agency is not asserting any additional jurisdiction of its own, but simply taking a position in a dispute between other entities involved in a complex regulatory scheme in which vast amounts of federal funds are expended.

Reversed.