**NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Plaintiff-Appellant,**

v.

**Barbara B. BLUM, as Commissioner of Social Services of the State of New York, et al., Defendants-Appellees.**

**No. 936, Docket 81–6251.**

United States Court of Appeals, Second Circuit.

Argued April 2, 1982.
Decided May 4, 1982.

Peter F. Nadel, New York City (Rosenman, Colin, Freund, Lewis & Cohen, Stephen L. Ratner, Edward S. Kornreich, New York City, of counsel), for plaintiff-appellant.

J. D. Pope, Asst. U. S. Atty., S. D. N. Y., New York City (John S. Martin, Jr., U. S. Atty., S. D. N. Y., Richard N. Papper, Asst. U. S. Atty., New York City, of counsel), for defendant-appellee, Secretary of the Department of Health and Human Services.

Neal Johnston, Asst. Atty. Gen. of N. Y., New York City (Robert Abrams, Atty. Gen. of N. Y., New York City, of counsel), for Barbara B. Blum, David Axelrod and Howard F. Miller, defendants-appellees.

Before FEINBERG, Chief Judge, WINTER, Circuit Judge, and MISHLER, District Judge.*

FEINBERG, Chief Judge:

This appeal concerns one in a long series of challenges to the methodology chosen by the State of New York, with the approval of the Secretary of the United States Department of Health and Human Services, for computing Medicaid reimbursement under the Medicaid Act, 42 U.S.C. §§ 1396 et seq. (1976). This particular challenge was brought by the New York City Health and Hospitals Corporation (HHC), a public benefit corporation that operates many health care facilities, including municipal hospitals, and alleges a conflict between the State's 1980 Plan for Medical Assistance, N.Y.Admin.Code tit. 10, § 86 (approved Jan. 1, 1980) on the one hand, and the Medicaid Act and the Professional Standards Review Organizations (PSRO) Act, 42 U.S.C. §§ 1320c et seq., on the other hand. It comes to us as an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) of an order of the United States District Court for the Southern District of New York, Charles L. Brieant, Jr., J., denying a motion by HHC for summary judgment on the first of five counts in HHC's complaint against three state officials and the Secretary. We also have before us a motion by appellees to dismiss the appeal on the ground that it is moot and that § 1292(b) certification was improvidently granted. Because we agree that this case is not properly in this court, we grant the motion to dismiss and remand the case to the district court for further proceedings.

* Senior United States District Judge for the Eastern District of New York, sitting by designation.

## I.

The complicated procedural context in which we find ourselves arose as follows. On September 29, 1980, HHC filed a complaint against appellees for declaratory and injunctive relief, claiming that the State improperly calculated the rate at which HHC hospitals were reimbursed for the treatment of 1980 Medicaid patients.[1] In the challenged plan, the State sought to control the costs of Medicaid by basing reimbursement rates on how economically the hospitals that claimed reimbursement were run. To do that, a complicated plan, described in greater detail in Judge Brieant's memorandum and order of July 6, 1981, was employed. For purposes of this appeal, it is sufficient to note that the State did not reimburse a hospital for its actual 1980-incurred costs. Rather, the State calculated a per diem reimbursement rate for 1980 based on each hospital's performance in 1978. Hospitals were divided into "peer groups" according to their size, location, and other characteristics. The State then set ceilings for per diem costs for hospitals in each peer group based on the average actual costs of running the hospitals in that group in 1978. In order to determine the 1980 reimbursement rate for a given hospital, the State used that hospital's actual 1978 costs, but disallowed all 1978 costs over its peer group's ceiling. The State also took factors other than costs into account in determining the 1980 rate. Critical to this appeal is the fact that the State set ceilings on the number of days that it was appropriate to keep a patient in the hospital. Patients were categorized into 493 treatment groups and hospitals were categorized into four hospital groups. The State then calculated the average length of stay (LOS) of a patient in each treatment group in each hospital group for the year 1978. As with the cost ceilings, per diem rates for 1980 were lowered if, in 1978, a hospital kept its patients longer than the LOS ceiling allowed.

1. Judge Brieant summarized the five counts in the complaint as follows:

1. The LOS ceiling, incorporated in the State Plan, is inconsistent with the exclusive statutory authority of the PSROs to determine appropriate lengths of stay in each case. Implementation by the State Defendants accordingly violates the PSRO Act and Regulations promulgated thereunder; and the Secretary's approval is therefore arbitrary, capricious and invalid.

2. The LOS ceiling violates the Medicaid Act's requirement of reimbursement of "reasonable costs"; and the Secretary's approval of the LOS provisions is therefore invalid because:

(a) a double penalty is imposed on hospitals because the LOS ceiling *and* the PSRO determinations could result in a disallowance of the same routine costs;

(b) the LOS ceiling fails to take account of factors special to plaintiff's hospitals, such as the higher proportion of patients from lower socio-economic groups, admitted on emergency bases and requiring longer term care than those less socially disadvantaged having the same ailment; which in turn results in medically necessary longer lengths of stay;

(c) the LOS ceiling results in an disallowance of all routine costs incurred on excess days although only a small portion of the costs are attributable to the longer stay;

(d) use of imputed days, resulting from under-utilization of certain services, in calculating the LOS ceiling is not related to hospital efficiency or the reasonableness of the costs incurred.

3. The LOS ceiling violates the Medicaid Act's requirement that "methods and standards" for the determination of reasonable costs be included in the State Plan and approved by the Secretary. In the absence of standards, the grant of discretion to the State to determine LOS ceilings is impermissible. The Secretary's approval of the plan is therefore arbitrary and capricious.

4. Contrary to the requirements of the Medicaid Act and the regulations promulgated thereunder, *see* 42 U.S.C. § 1396a(a)(4) and implementing regulation 42 C.F.R. § 431.-12(e), the State did not consult the Medical Care Advisory Committee [established pursuant to N. Y. Social Services Act, § 365–c(2)] prior to the implementation of the Plan.

Count Five is asserted only against the State Defendants:

5. The State Defendants have excluded from reimbursement all costs incurred on PSRO disallowed days although the fixed costs are reasonable costs which ought to be reimbursed.

The defendants moved for summary judgment on all counts and the plaintiff moved for summary judgment on most counts. Judge Brieant denied all motions except for the State defendant's motion on count five. That motion was granted, but his decision is not before us at this time.

In the first count of the complaint, which is in issue here, HHC contends that a reimbursement rate that is based on a LOS factor conflicts with the PSRO Act. In the PSRO Act, Congress placed authority to oversee certain aspects of health care reimbursement under Medicaid and Medicare into the hands of special review boards composed of licensed doctors. Under the Act that was in effect in 1978 and 1980, if a hospital had a PSRO, then the PSRO was given conclusive authority to determine how many days' worth of services would be reimbursed under Medicaid, §§ 1320c–4(a)(1)(A) and 1320c–7(c), *Greater New York Hospital Association v. Blum*, 634 F.2d 668, 671 (2d Cir. 1980). HHC argues that the conclusiveness of the PSRO determination of an appropriate length of stay is undermined if the State can penalize a hospital for what the State considers an excessive LOS by simply lowering the per diem rate for each PSRO-approved day.

Both sides moved for summary judgment on this count and, in addition, the Secretary moved for dismissal for failure to state a claim upon which relief can be granted. Judge Brieant denied all motions by order dated July 6, 1981. He reasoned that since the Medicaid Act only gives the HHC the right to its "reasonable cost of inpatient hospital services," § 1396a(a)(13)(D), HHC would have standing to challenge the reimbursement formula only if the formula served to deny HHC's hospitals a reasonable cost. He therefore concluded that HHC's standing was a factual issue to be determined by a full trial, and that summary judgment was inappropriate. Subsequently, on July 24, 1981, Judge Brieant certified four questions as involving controlling questions of law, in substantial dispute, whose resolution would advance the ultimate termination of litigation. HHC petitioned this court for leave to appeal under 28 U.S.C. § 1292(b), and on December 11, 1981, a panel of this court accepted the following question for review:

[Assuming the length of stay provision in the New York State Medical Assistance Plan conflicts with the requirements of the PSRO Act] whether HHC has standing to assert injury, or is entitled to relief, based on the use of the "length of stay" factor in calculating the Medicaid per diem reimbursement rates in the absence of a showing that use of the calculated per diem rate has denied HHC reimbursement of its "reasonable cost" as required by the Medicaid Act, 42 U.S.C. § 1396a(a)(13)(D).[2]

In August 1981, however, an important change was made in the relevant federal law: PSRO determinations were eliminated from Medicaid, 42 U.S.C.A. § 1320c–4(a)(1)(A) and 1320c–7(c) (West Supp. 1975–81), and the states, which had formerly been required to get federal approval for their payment plans, were given plenary authority to determine "reasonable and adequate" reimbursement rates, compare § 1396a(a)(13)(D) (1976) with 42 U.S.C.A. § 1396a(a)(13)(D) (West Supp. 1975–1981). Contending that this case was made moot, and, in any event, was not appropriate for interlocutory appeal, appellees moved to have the certification vacated as improvidently granted. On February 9, 1981, a panel of the court referred the motions to the panel hearing the appeal and recommended that the parties apply to the dis-

---

**2.** The other questions certified by Judge Brieant, which were not accepted for review by the panel, were:

1. Whether the "length of stay" provisions in the New York State Medical Assistance Plan, 10 N.Y.C.R.R. § 86–1.14(c), adopted pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, conflict with the requirements of the Professional Standards Review Organizations Act, 42 U.S.C. §§ 1320c, *et seq.*

3. Whether as a matter of law, the approval of the "length of stay" provisions in the New York State Medical Assistance Plan by the Secretary of the United States Department of Health and Human Services is invalid as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," within the meaning of 5 U.S.C. § 706(2)(A), or as in excess of his statutory authority under the Medicaid Act, 42 U.S.C. § 1396a.

4. Whether summary judgment should have been entered for plaintiff HHC on Count 1 of its complaint.

trict judge to see whether he was inclined to modify or withdraw his certification. This application resulted in a memorandum and order dated February 11, 1982, in which Judge Brieant declined to decertify the question, although he did offer the modification set out in the margin.[3]

## II.

We can easily understand how this question came to be appealed in this manner. Standing "generally is a matter dealt with at the earliest stages of litigation, usually on the pleadings...." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 115 n.31, 99 S.Ct. 1601, 1615 n.31, 60 L.Ed.2d 66 (1979). Since a litigant cannot maintain his cause of action without demonstrating his standing, disposition of that issue often presents the type of controlling question suitable for interlocutory review. Nonetheless, upon careful consideration, we find that the certified question is not now ripe for review.

There are a number of fundamental problems with the appeal as now presented to us. Thus, there is no district court ruling on the overall issue of HHC's standing to bring the claim alleged in count one of the complaint. The district judge refused to hold that HHC had standing as a matter of law; but neither did he rule that HHC did not have standing. The trial judge was of the view that HHC's standing was a factual issue to be determined after a full trial on the question whether the reimbursement formula denied HHC reimbursement of its "reasonable cost" under 42 U.S.C. § 1396a(a)(13)(D). But HHC's first cause of action—the only one before us—does not

allege that it was denied reasonable costs under that section. The crux of that cause of action is that the LOS penalty provision conflicts with the PSRO Act. Although the district court expressed a belief that the LOS ceiling "may conflict" with the PSRO Act and certified that issue, the judge did not decide the issue. Nor did the district court discuss whether the PSRO Act provides a private cause of action to a hospital, a question that was specifically left open by this court in *Greater New York Hospital Association v. Blum*, 634 F.2d at 672 n.8. Indeed, if such a cause of action exists, plaintiff would seem the logical party to seek to enjoin an alleged conflict between the LOS provision and the PSRO Act.

Appellant argues that that even if the PSRO Act does not provide it with a cause of action, it nonetheless has the right to challenge the LOS penalty under the Medicaid Act. This is true, HHC claims, because § 1396a(a)(13)(D) defines "reasonable cost" as that "determined in accordance with methods and standards, consistent with section 1320a–1 of this title, which shall be . . . approved by the Secretary . . . ." Since the Secretary is required to apply the PSRO Act, any violation of that Act necessarily reduces HHC's reimbursement below the statutory reasonable costs, giving HHC the right to sue. Put in this way, a key question again becomes whether the LOS provision violates federal law, an issue not decided by the district court.

Section 1292(b) was not designed to bring up the merits without prior adjudication in the trial court; the section allows interlocutory appeal of orders—not interlocutory ap-

---

**3.** "Whether plaintiff-appellant HHC has standing to assert injury, or is entitled to relief under any provision of Title 19 of the Social Security Act, 42 U.S.C. § 1396a, *et seq.*, as the same has been from time to time amended, based on the use of the 'Length of Stay' factor, as set forth in the 1980 and 1981 New York Medical Assistance Plans, in calculating the Medicaid *per diem* reimbursement rates for service rendered by HHC in 1980 or 1981, or in the reasonable future, in the absence of a showing that use of a calculated *per diem* rate including a 'Length of Stay' factor, has denied or will deny HHC reimbursement of its reasonable cost as re-

quired by the Medicaid Act, 42 U.S.C. § 1396a(a)(13)(D) as in effect in 1980 and 1981, or by Federal Regulation 447.252, as adopted September 30, 1981 with respect to reimbursement for Medicaid services rendered thereafter and in the future to Medicaid patients."

The government asserts to us that:

It should be noted that the revised question refers to facts, laws and claims that HHC has never presented to the district court, that the defendants have never been notified of, and that none of the parties has had an opportunity to brief.

peal of issues. Consequently, there has to be an order to appeal from that decides the merits of the "controlling question" certified. Fed.R.App.P. 5(b) states "The petition shall contain a statement of the facts necessary to an understanding of the controlling question of law *determined by the order of the district court . . . ."* (Emphasis added). While it is true that, as already indicated, the district judge denied summary judgment on the ground that HHC lacked standing as a matter of law, the certified question is based on an assumed conflict between the LOS penalty and federal law, and the district judge has not decided whether the conflict in fact exists. Appellant is therefore apparently asking us for an advisory decision based on a premise that may be destroyed. This we should not do, see *Oneida Indian Nation of New York State v. County of Oneida,* 622 F.2d 624, 628 (2d Cir. 1980). See also *Nickert v. Puget Sound Tug & Barge Co.,* 480 F.2d 1039 (9th Cir. 1973) (per curiam). In the latter case, the trial court's order stated that if at the trial on the merits, it is found that $X$ is true, then partial summary judgment will be entered in favor of the defendant. It then certified to the circuit court the question whether a finding of $X$ required judgment for defendant as a matter of law. The Ninth Circuit vacated the certification on the ground that "The trial court's announcement of its opinion on this question of law, although characterized as partial summary judgment, is nothing more nor less than an hypothetical, advisory opinion. It is subject to revision or reversal at any time . . . ." Id. at 1041.

Another problem with the certified question is that it might relate to an issue that is now moot. Significant changes have been made in the relevant federal law, and under the general rule, appellant's case must be evaluated under the law as it stands now, *Fusari v. Steinberg,* 419 U.S. 379, 387, 95 S.Ct. 533, 538, 42 L.Ed.2d 521 (1975). While we can imagine several situations that might make the controversy still live,[4] the determination of mootness should be made, in the first instance, in the district court. A finding there that the case is moot would make our standing pronouncement merely advisory.

In view of the foregoing discussion, we feel compelled to dismiss the appeal because the § 1292(b) certification was improperly granted. After the case is returned to the district court, however, HHC need not follow the same course of attempting to obtain swift appellate review by the certification route. We understand HHC's concern for quick relief, particularly in view of its claim that some of its constituent hospitals are "bleeding to death" because of appellee's disallowance of many millions of dollars of reimbursement. We see no reason, however, why HHC cannot seek a preliminary injunction, a course it apparently decided not to follow in the trial court, as the judge pointed out in a footnote in his July 6 memorandum. This route offers the potential of providing HHC with the relief it claims it needs. If the trial court finds HHC's arguments persuasive, the court could enjoin further, arguably incorrect, payments for 1980 pendente lite and preserve the viability of the appeal and the prospective nature of the relief sought.[5]

4. For example, if many of the reimbursements for 1980 have not as yet been made, the controversy as to how these should be calculated prevents the case from being moot. At oral argument, an argument was made that since the LOS ceiling was based on 1978, when very few of the hospitals were subject to PSRO supervision, the LOS penalty could not conflict with the PSRO Act. If that is the case, then perhaps a conflict would arise if a LOS penalty were applied to 1982 reimbursements based on the length of stay of patients subject to PSRO in 1980. The argument would be that since

PSRO determinations were conclusive in 1980, the 1982 reimbursements plan might violate federal law even though that law has since been changed.

5. Relief for past violations of the PSRO Act would not be obtainable in federal court by reason of the eleventh amendment, *Edelman v. Jordon,* 415 U.S. 651, 666–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974). We are informed by the parties that a state court action was also filed, and has been stayed pending resolution of the questions in federal court.

Also the trial court's decision either to grant a preliminary injunction or to deny it would be appealable immediately under § 1292(a)(1), allowing rapid determination of various important issues of public law. Most importantly, the process of deciding whether to issue the injunction will more fully crystallize the questions, create a better record, and give us the benefit of the trial court's thinking on each of the important subissues involved. We realize that a decision to grant a preliminary injunction turns on the likelihood of HHC's success on the merits, and not on the definitive correctness of its position. Nevertheless, adjudication of the application would require the court to determine first, whether it is likely that the PSRO Act creates a right of action in favor of hospitals subject to PSRO oversight. The court would also be required to decide whether it is likely that the LOS provision conflicts with the PSRO Act, and that the controversy is still a live one.

A preliminary injunction will not, of course, necessarily avoid a later, time-consuming trial. But neither would a decision on the certified question. Three other counts remain to be tried, and in addition, framing a permanent injunction may well require the district court to take extensive evidence on whether the state could contain costs in other ways consistent with the PSRO Act.[6] We also realize that HHC would like to have a decree framed in a manner that would further its cause in the state court, where it is suing to recoup reimbursements that had been denied by reason of the LOS penalty. But that alone would not justify our entertaining an appeal we would otherwise dismiss, cf. *Hospital Association of New York State, Inc. v. Toia*, 577 F.2d 790, 798 (2d Cir. 1978).

The appeal is dismissed on the ground that § 1292(b) certification was improvidently granted, and the case is remanded to the district court.

---

**6.** HHC seems to assume that if the LOS penalty were declared illegal, then HHC would be entitled to all the costs disallowed by reason of excessive numbers of in-patient days in 1978. However, the State claims that various other formulas are available to it, arguably including the possibility of basing the rates solely on the efficiency of processing non-PSRO patients, thereby making probable a trial on such issues in any event.