**Bonnie PARKER, Jean Davis, and Paula Mundy, Individually and representative of the class, Plaintiffs,**

v.

**DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE,**

**and**

**Tennessee Foundation For Medical Care, Inc., Defendants.**

**TENNESSEE FOUNDATION FOR MEDICAL CARE, INC., Cross-Claimant,**

v.

**DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE, Respondent.**

No. 79–3104.

United States District Court, M. D. Tennessee, Nashville Division.

Oct. 24, 1979.

Shelley I. Stiles, III, Nashville, Tenn., for plaintiffs.

William M. Cohen, Asst. U.S. Atty., Nashville, Tenn., for defendant Department of Health, Education and Welfare. Carl H. Harper, Myles E. Eastwood, Atlanta, Ga., of counsel.

Lee T. Ellis, Jr., Washington, D.C., Thomas H. Dundon, Nashville, Tenn., for defendant Tennessee Foundation for Medical Care, Inc.

## MEMORANDUM

WISEMAN, District Judge.

Pursuant to 42 U.S.C. §§ 1320c *et seq.,* the defendant Department of Health, Education, and Welfare (DHEW) designated the defendant Tennessee Foundation for Medical Care, Inc. (TFMC) as a Professional Standards Review Organization (PSRO).[1] DHEW contracted with TFMC to review medicare and medicaid claims in 83 counties in Tennessee. The contract between DHEW and TFMC provided that DHEW reimburse TFMC for the costs incurred in the performance of the contract, described in the contract as, *inter alia,* salaries and wages, including fringe benefits, of TFMC

---

1. The purpose of the PSRO Act is discussed in part II *infra* of this memorandum. *See generally Association of Am. Physicians & Surgeons v.* *Weinberger,* 395 F.Supp. 125 (N.D.Ill.), *aff'd,* 423 U.S. 975, 96 S.Ct. 388, 46 L.Ed.2d 299 (1975).

employees, and travel and subsistence expenses incurred in the direct performance of the contract.[2] The named plaintiffs and the class they seek to represent were hired by TFMC. In November of 1978, DHEW terminated or refused to renew its contract with TFMC.[3] As a result, TFMC terminated the plaintiff employees without providing them severance and termination pay and travel expenses that they allege TFMC owed to them under their employment contracts with TFMC. Defendant TFMC has stated that it submitted vouchers to DHEW in which it requested reimbursement for its employee's severance and termination pay but that DHEW has not paid such money to TFMC.[4]

Plaintiffs have filed a complaint and two subsequent amended complaints in this Court against TFMC, a Tennessee nonprofit corporation with which plaintiffs had individual employment contracts, and DHEW, an agency of the United States. Plaintiffs have moved that the Court certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Defendant DHEW has moved to dismiss plaintiffs' complaint for lack of jurisdiction and has opposed class certification. Defendant TFMC has cross-filed against DHEW pursuant to Rule 13(g) of the Federal Rules of Civil Procedure, and DHEW has moved to dismiss the cross-claim.

In plaintiffs' original complaint, they alleged that this Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1346(b), and 41 U.S.C. §§ 101 *et seq.* In their first amended complaint, plaintiffs asserted jurisdiction on the same grounds and added 45 C.F.R., subtit. A, pt. 74, subpt. Q, app. F, § G, ¶ 40 (1978) as a fourth jurisdictional basis. In their second amended complaint, plaintiffs asserted jurisdiction under 42 U.S.C. §§ 1320c–1 *et seq.*, 42 C.F.R. §§ 101.1 *et seq.* (1977), and 45 C.F.R., subtit. A, pt. 74, subpt. Q, app. F, § G (1978). An allegation of jurisdiction under 28 U.S.C. § 1346(a)(2) was notably absent from the final amended complaint, although, on the same day that it was filed, plaintiffs filed a reply brief in opposition to defendant DHEW's motion to dismiss in which they argued that they had properly asserted jurisdiction under 28 U.S.C. § 1346(a)(2) by itself and in conjunction with the statute and regulations noted in the final amended complaint. The Court will, therefore, assume that plaintiffs intend to assert jurisdiction under section 1346(a)(2) despite the omission in the final amended complaint. Since no mention was made of either the Federal Torts Claims Act, 28 U.S.C.

**2.** The applicable provision of the contract between DHEW and TFMC reads as follows:

> The Contractor will be reimbursed for all costs as described below, incurred directly and specifically in the performance of this contract, claimed by the Contractor, and accepted by the Contracting Officer:
>
> 1. Salaries and wages including related fringe benefits of the Contractor's employees directly employed in performing the work required by this contract.
>
> .    .    .    .    .
>
> 4. Travel and subsistence expenses exclusively in direct performance of this contract. . . .

Exhibit 2 to plaintiffs' second amended complaint.

**3.** Whether or not DHEW terminated or refused to renew its contract with TFMC remains a matter of dispute between the parties. In an order denying TFMC's motion for a preliminary injunction prohibiting DHEW from cutting off funding to TFMC, the District Court for the District of Columbia held that TFMC's arguments that DHEW terminated the contract and

therefore violated the statutory notice provisions applicable when a contract is terminated "lack[ed] substantial merit." *Tennessee Foundation for Medical Care, Inc. v. Califano,* No. 78–1875, at 8 (D.D.C. Nov. 1, 1978).

**4.** According to DHEW's brief in support of its motion to dismiss TFMC's cross-claim, TFMC refused to allow DHEW full access to its books from the summer of 1978 until May of 1979. DHEW, therefore, contends that it was stymied in its determination of final allowable costs under the contract. TFMC admits that plaintiffs are entitled to severance pay under the terms of their employment contracts. *See* memorandum in support of TFMC's opposition to DHEW's motion to dismiss TFMC's cross-claim, at 2–3. Similarly, DHEW has not denied that it owes TFMC allowable costs under its contract, but DHEW maintains that the determination of allowable costs will be made by DHEW now that its auditors have access to TFMC books. *See* brief in support of DHEW's motion to dismiss TFMC's cross-claim, at 4–5.

§ 1346(b), or 41 U.S.C. §§ 101 *et seq.*, dealing with termination of war contracts, in either the final amended complaint or in the brief filed on the same day, the Court will assume that plaintiffs intentionally omitted those bases for jurisdiction, and the Court will not consider them herein.

■ In their second amended complaint, plaintiffs appear to assert jurisdiction solely on the basis of the Professional Standards Review Organizations Act (PSRO Act), 42 U.S.C. §§ 1320c-1 *et seq.*, as well as 42 C.F.R. §§ 101.1 *et seq.* (1977),[5] the implementing regulations for the PSRO Act, and 45 C.F.R., subtit. A, pt. 74, subpt. Q, app. F, § G (1978), which sets forth standards for determining specific types of costs for which the government will reimburse nonprofit institutions with which it has contracted. Neither the PSRO Act nor these regulations provide that the federal district court shall have jurisdiction of claims arising under them, as plaintiffs' complaint seems to suggest. Rather, jurisdiction must be asserted under the Tucker Act, 28 U.S.C. § 1346(a)(2), which provides that the district court shall have concurrent jurisdiction with the Court of Claims of claims for $10,000 or less against the United States arising out of the government's alleged breach of contract or founded upon the Constitution, a federal statute, or regulation.[6] Plaintiffs have averred that jurisdiction of this case is proper under either part of section 1346(a)(2). They contend that the government entered into an implied-in-fact contract with the TFMC employees that the government has breached. In addition, they maintain that their claims are founded upon the PSRO Act and applicable regulations so that this Court has jurisdiction via the Tucker Act.

■ As anachronistic and/or unfair as it may seem or, indeed, may be, it is an uncontrovertible principle of this judicial system that a citizen may not recover money damages against the United States government unless the government consents to be sued. *United States v. Sherwood,* 312 U.S. 584, 586–87, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058, 1061 (1940); *Lenoir v. Porters Creek Watershed Dist.,* 586 F.2d 1081, 1087 (6th Cir. 1978); *Wallingford Steel Co. v. Wire & Metal Specialties Corp.,* 347 F.Supp. 1310, 1311 (W.D.Pa.1972). Through the Tucker Act, the government has relinquished its sovereign immunity in cases falling under its provisions. The determination essential in this case is whether or not the instant case is included within the ambit of the Tucker Act, which confers jurisdiction upon this Court and allows plaintiffs to recover, if successful in their action, against the United States.

## I. Tucker Act Jurisdiction Because of Implied-In-Fact Contract

The United States, through DHEW, contracted with TFMC, which, in turn, entered into employment contracts with the plaintiffs. The United States did not have an express contract with the TFMC employees nor do the plaintiffs insist that such a contract existed. Plaintiffs do, however, argue that the United States entered into an implied-in-fact contract with them for breach of which the government is liable directly to them.

■ For jurisdiction to obtain under the Tucker Act, the contract upon which suit is based must be express or one that is implied in fact rather than implied in law.

**5.** These sections were first promulgated as 101.1 *et seq.* in 1974; as of 1978, however, they are listed as sections 460.1 *et seq.* in the Code of Federal Regulations.

**6.** The pertinent part of the Tucker Act is as follows:
  (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

  .  .  .  .  .

  (2) Any other civil action or claim against the United States [other than claims brought under 28 U.S.C. § 1346(a)(1) for recovery of tax or penalty under the internal revenue laws], not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.  .  .  .

United States v. Minnesota Mut. Inv. Co., 271 U.S. 212, 217, 46 S.Ct. 501, 502, 70 L.Ed. 911, 913 (1925); *Knight Newspapers, Inc. v. United States*, 395 F.2d 353, 357 (6th Cir. 1968). An implied-in-fact contract is one that is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597, 43 S.Ct. 425, 427, 67 L.Ed. 816, 818 (1923). *See also Algonac Mfg. Co. v. United States*, 428 F.2d 1241, 1255–56, 192 Ct.Cl. 649 (1970); *Board of Supervisors v. United States*, 408 F.Supp. 556, 567 (E.D.Va.1976), *dismissed*, 551 F.2d 305 (4th Cir. 1977); *Judd v. Heitman*, 402 F.Supp. 929, 933 (M.D.Tenn.1975). Implicit in this definition is that the parties to the implied-in-fact contract must have had some relationship with each other and conducted themselves in such a manner that it is obvious that they assented to be mutually obligated by the contract. In contrast is the implied-in-law or quasi contract, which is really no contract at all but will be judicially imposed because of moral and equitable considerations. Such a contract is often implied despite, not because of, the intent of one party. *See Stewart Sand & Material Co. v. Southeast State Bank*, 318 F.Supp. 870, 873–74 (W.D.Mo.1970).

■ Plaintiffs suggest either that privity has no place in implied-in-fact contracts or that third party beneficiaries to a contract may recover without establishing privity with the government. There is no reason that the requirement of privity is no less a part of an implied-in-fact contract than it is of an express contract. Although the Court of Claims has found jurisdiction under 28 U.S.C. § 1491[7] over a claim brought by a third party beneficiary of a treaty between the United States and an Indian tribe, *Hebah v. United States*, 428 F.2d 1334, 192 Ct.Cl. 785 (1970), there is no indication from the contract between the United States and

TFMC that plaintiffs were the intended third party beneficiaries of that contract.

■ The Court has not been able to locate, nor have the parties provided the Court with, any cases in which Tucker Act jurisdiction was successfully asserted by employees of a government contractor. The most closely analogous cases are those in which subcontractors not in privity with the government have unsuccessfully attempted to establish jurisdiction in either the Court of Claims or the district court in their suits against the United States government. *Gardiner Mfg. Co. v. United States*, 479 F.2d 39 (9th Cir. 1973); *Nickel v. Pollia*, 179 F.2d 160, 163 (10th Cir. 1950). *See also United States v. Blair*, 321 U.S. 730, 737, 64 S.Ct. 820, 823, 88 L.Ed. 1039, 1044 (1943); *Merritt v. United States*, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643 (1925); *Warren Bros. Roads Co. v. United States*, 105 F.Supp. 826, 831, 123 Ct.Cl. 48 (1952); *Severin v. United States*, 99 Ct.Cl. 435, 442 (1943), *cert. denied*, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). The fact that the prime contract requires prior approval of a subcontractor by the government, and the government does so approve the subcontractor does not establish sufficient privity to confer jurisdiction under the Tucker Act. *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640, 643 (9th Cir. 1961). The assertion by plaintiffs that DHEW approved the TFMC employment policy pursuant to which plaintiffs were hired does not supply as much connection between the parties as was present in *American Pipe & Steel*. The Court cannot find privity simply from government involvement in the hiring policies of contractors without any direct relationship between the government and the employees of the contractor.

## II. Tucker Act Jurisdiction Because Claim is Founded Upon the Constitution, Statute, or Regulation

■ In addition to plaintiffs' contention that the United States and plaintiffs en-

---

7. Section 1346(a)(2) provides that the Court of Claims and district courts shall have concurrent jurisdiction of claims for $10,000 or less. Claims exceeding that amount may be brought

in the Court of Claims pursuant to 28 U.S.C. § 1491, the wording of which directly tracks the pertinent provision of section 1346(a)(2) as quoted in note 6 *supra*.

tered into an implied-in-fact contract so that jurisdiction may be asserted under the Tucker Act, plaintiffs submit that Tucker Act jurisdiction is appropriate because their claims are founded upon statutory and regulatory authority. If the cause of action is based on a statute or regulation, there is no need for contractual privity between the parties as there is if the claim arises out of an express or implied-in-fact contract between the claimant and the United States.

The Court of Claims has examined the types of cases falling under this part of the Tucker Act and has ascertained two categories of suits. The first group involves cases in which a plaintiff has improperly paid money to the government in contravention of the Constitution, a statute, or regulation. Typical of this type of case are tax refund suits. The second category consists of cases in which the law expressly or by implication mandates that the government pay money to a claimant in specific situations. Characteristic of this category are cases in which a statute authorizes compensation to the plaintiff for flood damage.[8] *See Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 1007–09, 178 Ct.Cl. 599 (1967). *See also Davis v. Romney*, 355 F.Supp. 29, 46–48 (E.D.Pa.1973). The case at bar obviously does not fall under the first category. The government has not illegally extracted payment from the plaintiffs nor have the plaintiffs paid money to the government.

If jurisdiction exists under the Tucker Act, this case must be within the scope of the second category. The statute and/or regulations must expressly or by implication grant plaintiffs a right to be paid money in compensation for damage suffered. *Eastport Steamship Corp. v. United States, supra.* There is no indication in 42 U.S.C. §§ 1320c–1 *et seq.* that the government committed itself to pay employment benefits directly to employees of its PSRO contractors. Section 1320c–17 of the PSRO Act describes the funding sources for the administration of the PSRO pro-

grams, but this section cannot be interpreted to mean that the government intends to pay PSRO contractor employees directly.

Correlatively, the PSRO Act cannot be construed as designating plaintiffs as intended beneficiaries of the Act. The purpose of the Act is found in the congressional declaration preceding the PSRO Act, as follows:

> In order to promote the effective, efficient, and economical delivery of health care services of proper quality for which payment may be made (in whole or in part) under this chapter and in recognition of the interest of patients, the public, practitioners, and providers in improved health care services, it is the purpose of this part to assure, through the application of suitable procedures of professional standards review, that the services for which payment may be made under this chapter will conform to appropriate professional standards for the provision of health care and that payment for such services will be made—
>
> (1) only when, and to the extent, medically necessary, as determined in the exercise of reasonable limits of professional discretion; and
>
> (2) in the case of services provided by a hospital or other health care facility on an inpatient basis, only when and for such period as such services cannot, consistent with professionally recognized health care standards, effectively be provided on an out-patient basis or more economically in an inpatient health care facility of a different type, as determined in the exercise of reasonable limits of professional discretion.

42 U.S.C. § 1320c.

From this preamble, it is apparent that the congressional concern underlying the enactment of the PSRO Act was the promotion of economical yet efficient health care services for which the government provides funding through the Medicaid and Medicare programs. Prior to passage of the law, the

---

8. Other examples include eminent domain cases and claims for disability and back pay brought by government employees. *See East-*

*port Steamship Corp. v. United States, supra,* at 1008.

Senate heard testimony indicating that health care services, including hospitalization and surgical procedures, to Medicare and Medicaid patients were "overutilized." It was the intent of the legislation to eliminate unnecessary medical treatment not only because it was costly but also because it might have adverse effects on the health of the patients involved. *See Association of Am. Physicians & Surgeons v. Weinberger,* 395 F.Supp. 125, 128–29 (N.D. Ill.), aff'd, 423 U.S. 975, 96 S.Ct. 388, 46 L.Ed.2d 299 (1975). Clearly, the purpose of the Act was not to provide employment or employment benefits to those with whom PSROs contracted.

The implementing regulations for the PSRO Act, 42 C.F.R. §§ 101.1 *et seq.* (1977), now 42 C.F.R. §§ 460.1 *et seq.* (1978), make no mention of funds payable directly to PSRO employees. Standards for determining allowable costs payable to the PSRO contractor are described in appendix F to 45 C.F.R., subtit. A, pt. 74, subpt. Q (1978). For example, paragraph 40 of section G of the appendix specifically lists severance or dismissal pay as an allowable cost in the PSRO program. The purpose of appendix F is set forth in section A, as follows:

> 1. *Objectives.* This Appendix provides principles for determining the costs applicable to grants and contracts and performed by non-profit organizations. . . . These principles are confined to the subject of cost determination and make no attempt to identify the circumstances or dictate the extent of agency and institutional participation in the financing of a particular project. The principles are designed to provide recognition of the full allocated costs of work under generally accepted accounting principles. . . .

> . . . . .

> 4. *Application.* These principles shall be applied in determining cost incurred in the performance of all grants and cost-reimbursement type contracts awarded by the Department of Health, Education, and Welfare. The principles shall also apply to cost-reimbursement type contracts performed under DHEW grants. . . .

There is no manifestation in Appendix F of congressional intent to commit the government to pay funds directly to PSRO employees. The regulations relating to allowable costs focus upon payments due an institution, in this case, TFMC, that has been awarded a grant or contract by the government.

Nowhere in the PSRO Act itself or in the regulations can an intent on the part of the government to benefit PSRO employees be inferred. Similarly, there is no statutory or regulatory indication that Congress meant to waive its sovereign immunity in suits brought against the United States by PSRO employees.

### III. *Conclusion*

■ It could well be argued that the United States is morally obligated to make payment to TFMC employees for those items that fall under allowable costs payable to PSROs and included in plaintiffs' employment contracts with TFMC. A moral obligation, however, constitutes the basis for an implied-in-law contract and is not cognizable under the Tucker Act. It is the holding of this Court that the plaintiffs and the United States did not enter into an express or implied-in-fact contract and, further, that 42 U.S.C. §§ 1320c–1 *et seq.,* 42 C.F.R. §§ 101.1 *et seq.* (1977), and 45 C.F.R., subtit. A, pt. 74, subpt. Q, app. F, § G (1978) do not expressly or by implication commit the government to pay funds directly to the plaintiffs. Jurisdiction under the Tucker Act is, therefore, inappropriate in this case.

For the foregoing reasons, defendant United States' motion to dismiss is granted. The posture of this case becomes a suit by TFMC employees against TFMC. TFMC is a Tennessee corporation, and the plaintiffs are Tennessee residents. There is, therefore, no diversity between the plaintiffs and remaining defendant and no jurisdiction in this Court. Obviously, plaintiffs may bring an action against TFMC for breach of contract in state court, and TFMC may assert jurisdiction against DHEW under the Tuck-

er Act in federal district court, as it has done in the District Court for the District of Columbia. *See Tennessee Foundation for Medical Care, Inc. v. Califano,* No. 78–1875 (D.D.C.).

Having ruled that this Court has no jurisdiction over a suit against the United States or against the nondiverse TFMC, the Court finds it unnecessary to consider plaintiffs' motion for class certification or the defendant United States' motion to dismiss the cross motion filed by TFMC.