Roosevelt **TAYLOR, D.O., Plaintiff,**

v.

**FLINT OSTEOPATHIC HOSPITAL, INC., et al., Defendants.**

**Civ. A. No. 80–74874.**

United States District Court, E.D. Michigan, S.D.

April 15, 1983.

Richard G. Stehno, Flint, Mich., for plaintiff.

James Frimet, James Lites, Southfield, Mich., Bruce W. Franklin, Troy, Mich., for defendants.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION OF DEFENDANTS PROFESSIONAL STANDARDS REVIEW ORGANIZATION—GLSC, LARRY ALTON, D.O., FREDERICK W. VAN DUYNE, M.D., AND DONALD R. BLASS TO DISMISS OR FOR SUMMARY JUDGMENT

PATRICIA J. BOYLE, District Judge.

This is an action under various civil rights laws and the Social Security Act, 42 U.S.C. §§ 1395 *et seq.,* initiated by plaintiff, a black physician, against defendant hospital, various officials at the hospital, and against defendant Professional Standards Review Organization (hereinafter "PSRO") and various officials of the PSRO. Plaintiff alleges that the PSRO, through its officials Larry Alton, Frederick Van Duyne, and Donald Blass, discriminated against plaintiff and his black patients on the basis of race in determining that many of the medical services performed by plaintiff for his Medicaid and Medicare patients were medically unnecessary and hence that said services were not to be reimbursed under Medicaid and Medicare. Plaintiff alleges that the hospital, through its officials including W. Dale Ferguson, and the PSRO acting in conspiracy with the hospital discriminated against plaintiff and his patients on the basis of race in depriving plaintiff of various staff privileges and, ultimately, in suspending him from the hospital and in depriving plaintiff's patients of the doctor's services which allegedly caused various injuries to the patients, including one fatality.

Defendants PSRO, Alton, Van Duyne, and Blass (hereinafter the "PSRO defendants" or simply the "PSRO"), bring the instant motion to dismiss or for summary

judgment contending that plaintiff has failed to state a claim or has failed to establish a genuine issue of material fact under the civil rights laws; that there is no implied right of action under the Social Security Act; that plaintiff has no standing to assert the claims of his patients;[1] that plaintiff has failed to establish that the PSRO acted under color of state law for purposes of 42 U.S.C. § 1983; that plaintiff has failed to plead a conspiracy with hospital officials with requisite specificity; that the PSRO and its agents are immune from suit pursuant to federal law, 42 U.S.C. § 1320c–16, state law, M.C.L.A. § 331.531, and under the doctrine of sovereign immunity; that plaintiff has failed to exhaust his administrative remedies with the PSRO; that plaintiff's claims which arose prior to 1977 are barred by the applicable statute of limitations; and that the remainder of plaintiff's pendent state law claims should be dismissed under *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), since plaintiff has failed to establish this court's federal jurisdiction.[2]

■ In determining the sufficiency of a complaint in the face of a motion to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(6), the accepted rule as articulated by the United States Supreme Court is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). If, on a motion to dismiss or a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Fed.R. Civ.P. 12(c). Under Rule 56,

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

. . . .

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Defendant appears to raise challenges under both Rule 12(b)(6) and Rule 56(c), and accordingly, to the extent that the court will consider matters outside the pleadings on a given claim or defense, the ruling shall specify that it is based on Rule 56(c).

An evaluation of the instant claims requires at the outset some discussion of the role performed by the PSRO in the Social Security System. 42 U.S.C. § 1320c, *et seq.* Congress, concerned with the rapidly rising costs of the Medicaid and Medicare programs which it found to be caused in part by unnecessary use of medical services, enacted this peer review system "to promote the effective, efficient, and economical delivery of health care services of proper quality for which payment may be made (in whole or in part) under [the Social Security Act] . . . ." 42 U.S.C. § 1320c. S.Rep. No. 92–1230, 92d Cong., 2d Sess. 254–55 (1972). *See Public Citizen Health Research Group v. Department of Health Education and Welfare, et al.,* 668 F.2d 537, 538–39 (D.C. Cir.1981). Under the PSRO program, HEW

---

1. These latter two contentions were addressed and ruled upon by the court from the bench. This court's ruling was that there is no implied right of action under the Social Security Act and that plaintiff does not have standing to assert the claims of his patients. This opinion and order hereby incorporates those rulings.

2. Plaintiff's state claims include "defamation, intentional injuries caused the plaintiff, and violations of plaintiff's right to personal privacy." Complaint ¶ 4.

contracts with a "qualified organization" which is designated for a particular locale. 42 U.S.C. § 1320c–1(a). The legislative scheme envisions that the local PSRO is comprised of physicians in the private sector who are familiar with local conditions and the quality of medical services that doctors render in their particular locality. *Kwoun v. Schweiker,* 528 F.Supp. 1004, 1005 (E.D.Mo.1981).

In general terms, PSROs review health care services, furnished to individuals; collect and analyze patient, practitioner, and provider data; develop local norms of care; conduct various educational activities; and report practitioners and providers who violate certain statutory obligations. 42 U.S.C. §§ 1320c–4, 1320c–6, 1320c–9 (1976). In reviewing health care services rendered by or in institutions for which payment may be made under the Medicare and Medicaid programs, PSROs determine: (1) whether the services are or were medically necessary; (2) whether the quality of services meets professionally recognized standards of health care; and (3) whether the services could have been more appropriately rendered in another less expensive manner. 42 U.S.C. § 1320c–4(a)(1) (1976). The standards governing PSRO review are the professionally developed norms of care, diagnosis or treatment typical of practice in the particular region. 42 U.S.C. § 1320c–5(a) (1976).

*Public Citizen Health Research Group,* 668 F.2d at 539.

The PSRO in the instant matter reviewed the health care services provided at Flint Osteopathic Hospital (hereinafter "FOH") and determined that plaintiff had overutilized services compensable under Medicare and Medicaid in ninety instances. The next highest number by a physician at FOH was six with most physicians charged with two or less instances of overutilization. Plaintiff contends that a large percentage of his patients are black and, accordingly, that he performed medical services which were particularly well suited to the conditions and problems endemic to black patients. Plaintiff contends that his high rate of PSRO

denials for overutilization were caused by the racial discriminatory animus of the PSRO defendants. Plaintiff claims further that the PSRO defendants were responsible for the termination of his staff privileges at FOH.

First with respect to the latter contention, it is not disputed that the PSRO is without statutory authority to suspend a physician's staff privileges at a hospital within its locale. The only sanction which the PSRO may impose on a physician is to deny payment under the Social Security Act. 42 U.S.C. § 1320c–7. Thus if plaintiff seeks to hold the PSRO defendants responsible for his discharge from FOH, it must be on the basis of a conspiracy between the PSRO and the FOH defendants, the latter defendants alone having authority to suspend staff privileges.

■ Plaintiffs pleading a conspiracy under the civil rights acts must comply with the general requirement in Fed.R.Civ.P. 8 that the complaint contains a direct, simple, and concise statement that demonstrates the pleader is entitled to relief. In addition, a growing number of courts have required that complaints alleging conspiracy include more detail than usually is demanded of other pleadings. 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1233, p. 179 (1969). See *e.g. German v. Killeen,* 495 F.Supp. 822 (E.D.Mich.1980) (Cohn, J.). A plaintiff pursuing a theory of conspiracy under the civil rights acts is "bound to do more than merely state vague and conclusory allegations respecting the existence of a conspiracy. It [is] incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." (Bracket in original.) *Nation v. United States Government,* 512 F.Supp. 121, 125 (S.D.Ohio 1981) (quoting *Peck v. United States,* 470 F.Supp. 1003, 1008 (S.D. N.Y.1979), and citing *Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d Cir.1964)).

■ In the instant complaint, plaintiff alleges that FOH has engaged in a pattern and practice of racial discrimination against black persons in denying staff privileges to black physicians and in depriving black patients of medical care, emergency and otherwise. Plaintiff alleges that the PSRO manipulated the peer review system so as to discriminate against plaintiff and his black patients. Plaintiff does not, however, specify how the PSRO managed to assume the functions of FOH in depriving plaintiff of staff privileges and in depriving plaintiff's patients of care. The complaint fails to allege facts to support the broad allegation of conspiracy so as to bind the PSRO for acts which arise uniquely from FOH functions. Nothing in the complaint indicates when or by what acts the PSRO defendants deprived plaintiff and his patients of their alleged constitutional right to staff privileges and medical care. *German v. Killeen,* 495 F.Supp. at 828. Accordingly, plaintiff's claims which deprive from an alleged conspiracy with FOH to deprive plaintiff and his patients of constitutional and statutory rights are hereby dismissed pursuant to Federal Rule 12(b)(6).

As an alternative basis for the rejection of plaintiff's claim of a conspiracy between the PSRO and the FOH, this court concludes that plaintiff has failed to establish a genuine issue of fact as to the alleged conspiracy between the PSRO and FOH. With respect to the relationship between PSRO and FOH, plaintiff's submissions indicate the following: that defendant Larry Alton, D.O., served both as the Chief Advisor for the PSRO and as the Chairman of the Utilization Committee of FOH; that the PSRO had representatives at various meetings of the Utilization Committee at FOH; and that defendant Donald Blass, acting Executive Director of the PSRO, stated that he was going to "get" plaintiff. While the latter assertion is probative of the PSRO defendants' discriminatory animus toward plaintiff, the statement is not probative of the existence of a conspiracy between PSRO and FOH. Likewise, the attendance

of PSRO representatives at FOH, and the dual role of defendant Alton, do not establish the conspiratorial link between the separate alleged discriminatory acts of the PSRO and FOH. The PSRO statute does not suggest, and plaintiff has not demonstrated, that public interaction between the review organization and hospital personnel would be at all improper. On the contrary, one would expect members of an organization charged with peer review to maintain contact with officials of the hospitals which it reviews. Accordingly, this court having concluded that plaintiff has failed to establish a genuine issue of fact as to the allegation of a conspiracy between the PSRO and FOH, summary judgment shall be granted as to that claim.[3] The remainder of this opinion is directed to those allegations against the PSRO in its capacity as peer review organization which relate to the alleged discriminatory rejection of the Medicaid and Medicare claims of plaintiff's patients.

Turning then to plaintiff's claims under the civil rights acts, plaintiff has pleaded a claim under 42 U.S.C. § 1983 based upon an alleged deprivation of federal statutory rights, namely the Social Security Act, 42 U.S.C. § 1395 *et seq.,* and upon a deprivation of federal constitutional rights based in procedural and substantive due process and equal protection.

■ To establish a claim under section 1983, plaintiff must allege and prove that defendants acted under color of state or local law. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The "under color of state law" element for section 1983 has been treated as equivalent to the "state action" requirement under the fourteenth amendment. *Rendell-Baker v. Kohn,* —— U.S. ——, ——, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982). Plaintiff attempts to establish this element of the section 1983 cause of action under three theories: that FOH is acting under color of state law and that the PSRO

3. For example, plaintiff's claims under 42 U.S.C. §§ 1983 and 1985(3) rely specifically on

this conspiracy theory for their vitality. *See* discussion, *infra,* regarding section 1985(3).

is conspiring with the FOH, that the PSRO is performing a "public function" traditionally reserved to the State, and that there is a "nexus" between the state and the activities of the PSRO. With respect to the first theory since this court has rejected plaintiff's contention that the PSRO was involved in a conspiracy with FOH, *see discussion supra,* plaintiff's contention that FOH's activities can satisfy the "under color of state law" requirement as to the PSRO is without merit.[4]

■ Under the "public function" theory, state action may be found "in the exercise by a private entity of powers traditionally exclusively reserved to the State." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). The United States Supreme Court has explicitly rejected the expansion of the public function doctrine into a broad principle that all private entities "affected with the public interest" are state actors in all their actions, *id.* at 353, 95 S.Ct. at 454, and hence, the Court has noted "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Flagg Brothers, Inc. v. Brooks,* 436 U.S. at 158, 98 S.Ct. at 1734; *see also Newsom v. Vanderbilt University,* 653 F.2d 1100, 1114 (6th Cir.1981). This court has serious doubts as to whether the functions performed by the PSRO were ever in fact performed by the State, let alone "exclusively reserved" to the State. As was noted in earlier discussion, professional standards review is a creature of a federal statute enacted by Congress to encourage private practicing physicians to "assume responsibility for reviewing the appropriateness and quality of services provided under medicare and medicaid." Report of the Senate Committee on Finance on the Social Security Amendments of 1972, S.Rep. No. 92–1230, 92d

Cong., 2d Sess. at 257 (1972). *Public Citizen Health Research Group v. Department of Health Education and Welfare,* 668 F.2d 537, 542 (D.C.Cir.1981). Participation in a PSRO was to be voluntary and open to every physician in the area. Senate Report at 259. "Government, said the committee, should not undertake to review the appropriateness and quality of medical services." *Public Citizen Health Research Group,* 668 F.2d at 543. These expressions of Congress suggest strongly that the service performed by the PSRO is not a "public" function.

■ Finally with respect to the "nexus" theory of state action, "the inquiry must be whether there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). In the instant circumstances, the PSRO has little, if any, connection with the State of Michigan. At all times relevant to this action, the PSRO had conclusive authority to determine the propriety of services rendered and claims reimbursable under both Medicaid and Medicare, and hence, their findings have not been subject to state agency review. 42 U.S.C. § 1320c–7(c) (1977);[5] *Public Citizen Health Research Group,* 668 F.2d at 540; *Greater New York Hospital Ass'n v. Blum,* 634 F.2d 668, 670–71 (2d Cir.1980). As noted above, the PSROs were created by Congress to operate as a private and independent peer review system. A review of the 1972 Report of the Senate Committee on Finance on the Social Security Amendments, *supra,* led the circuit court in *Public Citizen Health Research Group* to conclude "that PSROs should be independent medical organizations operated by practicing physicians in the private sector and not government agencies run by government employ-

---

4. This court need not address the issue of whether FOH is acting under color of state law for purposes of this motion brought solely on behalf of the PSRO.

5. Under the 1981 Amendment to section 1320c–7, the states were authorized to conduct

a limited review of the PSROs. After that amendment, the states could contract directly with the private review organization in their state; however, all discriminatory acts alleged against the PSRO in this litigation occurred prior to the 1981 Amendment.

ees." 668 F.2d at 543. Finally to the extent that there is a nexus between the PSRO and any government entity, the entity is the United States and not the State of Michigan in that the PSRO was created and authorized by federal statute, 42 U.S.C. § 1320c *et seq.;* the administrative costs of operating the PSRO are reimbursed by the Department of Health, Education and Welfare, a federal agency, 42 U.S.C. §§ 1320c–4(f)(3), 1320c–17; 42 C.F.R. 462.1(a)(2); *Parker v. Department of Health, Education and Welfare,* 478 F.Supp. 1156, 1157 (M.D. Tenn.1979), and final determination by the PSRO is subject only to federal agency and federal court review. 42 U.S.C. § 1320c–8(b); see note 5, *supra. Greater New York Hospital Ass'n v. Blum,* 634 F.2d 668, 670 (2d Cir.1980). In sum, this court concludes that plaintiff has failed to demonstrate that the PSRO acted under color of state law, and accordingly, the PSRO is entitled to summary judgment on the section 1983 claim as a matter of law. Fed.R.Civ.P. 56.

 With respect to the claim under 42 U.S.C. § 1981, plaintiff charges that the PSRO discriminated against him in reviewing his patients' claims for reimbursement under Medicaid and Medicare. Plaintiff avers that the PSRO discriminated against black physicians and black patients and violated the standards set forth in 42 U.S.C. §§ 1320c–4 and 1320c–5 as follows:

> ... by failing to provide membership on review committees having the broadest representation feasible in terms of the various types of practice, e.g., for Negroes who live and work in environmental and discriminatory conditions which cause and aggravate health conditions, both physical and emotional, in which physicians like affiant, engage in the area served by PSRO.
>
> . . . .
>
> ... by failing to provide requisite contents of norms for peer review, e.g. taking into account differing but acceptable modes of treatment Negro patients exposed to impoverished, racially-hostile environments, including at times being subject to inherent conditions, e.g. sickle cell anemia.

Plaintiff contends further that defendant Blass of the PSRO stated that he was out to "get" plaintiff and that such statement evidences defendant's racially discriminatory animus. Finally, plaintiff suggests that the allegation of disparate treatment against him and his patients is evidenced by the fact the PSRO recommended denial as to ninety of his patients' medical reimbursement claims while no other FOH physician had more than six denials for the same period.

Section 1981 provides in relevant part that

> "[a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens and shall be subject to like punishment, pains, penalties ... and exactions of every kind, and to no other."

A trial court must adopt a broad outlook in enforcing this section, *Long v. Ford Motor Company,* 496 F.2d 500, 505 (6th Cir.1974). "To invoke the protection of § 1981, plaintiff must establish that defendants placed more stringent requirements on him because of his race; or that he was unable to make or enforce a contract that a white person could make or enforce ...." *German v. Killeen,* 495 F.Supp. 822, 827 (E.D. Mich.1980) citing *Long v. Ford Motor Company, supra.*

 Although not artfully drafted, plaintiff's complaint appears to state a claim under section 1981 against the PSRO inasmuch as it alleges, in essence, that the PSRO acted in a discriminatory manner in performing its peer review functions and that the PSRO's discriminatory conduct precluded plaintiff from performing his "contracts" with his patients and, ultimately, with FOH.

The PSRO's sole direct challenge to the section 1981 claim is that it is devoid of specific factual allegations that the PSRO's treatment of plaintiff differed from their

treatment of similarly situated white persons, as required by section 1981. This court having concluded, however, that the complaint fairly apprises the PSRO of the elements of plaintiff's claim under section 1981, the motion to dismiss this claim pursuant to Fed.R.Civ.P. 12(b)(6) is hereby denied. Furthermore, inasmuch as plaintiff as respondent has met his burden under Fed.R.Civ.P. 56(e) by providing affidavits and other submissions which "set forth specific facts showing that there is a genuine issue for trial," the motion for summary judgment is likewise denied. For example, defendants have failed to challenge substantively plaintiff's assertion that the PSRO's failure to take into account the unique medical and psychological conditions of plaintiff's Negro patients in its peer review process amounted to discriminatory conduct cognizable under section 1981.[6]

■ Based upon the allegations previously summarized, plaintiff also raises a claim under 42 U.S.C. § 1985(3) against the PSRO for a conspiracy arising from a class-based animus with the objective of denying plaintiff the equal enjoyment of rights secured by the law to all. The complaint alleges a conspiracy between PSRO and FOH,[7] but as discussed previously, the complaint fails to adequately specify the conspiratorial relationship between the PSRO and FOH, and accordingly, plaintiff's claim under 42 U.S.C. § 1985(3) is dismissed pursuant to Federal Rule 12(b)(6). *German v. Killeen, supra.*

■ Defendant contends the conduct complained of is privileged under both federal, 42 U.S.C. § 1320c–16 (1976), and state

law, M.C.L.A. § 331.531. Defendant concedes, and both statutory provisions specify, that PSRO defendants are not immune from liability if they act with malice. In light of this court's finding in connection with plaintiff's claim under 42 U.S.C. § 1981 that plaintiff has a colorable constitutional claim against the PSRO for racial discrimination, this court cannot conclude as a matter of law pursuant to Rule 56 that the PSRO acted without malice, and accordingly, defendant's statutory immunity defenses are rejected on that basis.[8]

■ The PSRO also raises a defense of sovereign immunity based on an argument that the PSROs are agents of the federal government when acting in the course of their mandate. While this opinion has suggested that there may be some "nexus" between the PSRO and the federal government, *see discussion, supra,* the overall character of the PSRO as an independent, private peer review system suggests that it does not function as an agent of the federal government, and accordingly that the doctrine of sovereign immunity is inapplicable. *See discussion Public Citizen Health Research Group v. Department of Health, Education and Welfare,* 668 F.2d 537, 541–44 (D.C.Cir.1981).

■ Defendant further suggests that plaintiff's various claims are barred by the doctrine of exhaustion of administrative remedies. With respect to this defense, it is well settled that there is no duty to exhaust administrative remedies prior to resort to the federal civil rights laws. *Patsy v. Board of Regents of the State of Florida,* —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d

---

6. While this court would anticipate an argument by the PSRO that notwithstanding the unique conditions of black patients, the treatment and services provided by plaintiff were inappropriate by professional standards or that section 1981 may not be employed to assure that persons be accorded unique or preferential treatment because of their race, *see Long v. Ford Motor Company,* 496 F.2d 500, 505 (6th Cir.1974), these arguments have not been suggested, briefed, nor supported by affidavits or other submissions, and hence, such challenges to the section 1981 claim are not presently before the court for determination.

7. While this court has considered the possibility that PSRO officials could conspire among themselves within the meaning of section 1985(3), the complaint is not fairly susceptible to such an interpretation.

8. Given the foregoing analysis, plaintiff's only remaining federal claims are under 42 U.S.C. §§ 1981 and 1988, the latter provision providing for attorney fees should plaintiff prevail on any of this substantive claims under the federal civil rights laws.

172 (1982); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). There have, however, been some limitations placed upon the "no exhaustion" rule. For example, the mere assertion of a constitutional claim is insufficient; the record must reflect a colorable claim. *Kechijian v. Califano*, 621 F.2d 1 (1st Cir.1980). This court having concluded that plaintiff has raised a colorable constitutional claim under 42 U.S.C. § 1981, plaintiff was not required to exhaust administrative remedies with the PSRO and the Department of Health, Education and Welfare.

 Finally, defendant has raised the statute of limitations as a bar to plaintiff's claims arising prior to August, 1977. Since section 1981 does not contain its own statute of limitations, this court is bound to follow the most analogous state statute of limitations in its determination of whether or not plaintiff's claim is barred. *McWilliams v. Escambia County School Board*, 658 F.2d 326 (5th Cir.1981). The Sixth Circuit has held that, if plaintiff's claim is one for a deprivation of civil rights, it is most analogous to a claim for injury to person and property, and hence, a three-year statute of limitations is applicable. M.C.L.A. § 600.-5805(7) (§ 600.5805(8) as amended). *Marlowe v. Fisher Body*, 489 F.2d 1057, 1063 (6th Cir.1973). Accordingly, plaintiff's claims under section 1981 arising prior to August, 1977, are barred by the Michigan statute of limitations, M.C.L.A. § 600.-5805(8). Likewise, plaintiff's state law claims for "intentional injuries" and for violation of a right to privacy which arose prior to August, 1977, are also barred by M.C.L.A. § 600.5805(8).

Plaintiff's claim of defamation is governed by M.C.L.A. § 600.5805(7), a one-year statute of limitations, and consequently, to the extent that this claim arose prior to August, 1980, it is time-barred.

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that the motion to dismiss, or for summary judgment, is GRANTED in part and DENIED in part.

IT IS SO ORDERED.