735 F.2d 168
 5 Soc.Sec.Rep.Ser. 265, Medicare&Medicaid Gu 34,024
Dr. Joseph M. SMITH and Lincoln General Hospital,
Plaintiffs-Appellants,
v.
NORTH LOUISIANA MEDICAL REVIEW ASSOCIATION, et al.,
Defendants-Appellees.
RAPIDES MEDICAL CENTER, INC., et al., Plaintiffs-Appellants
Cross-Appellees,
v.
NORTH LOUISIANA MEDICAL REVIEW ASSOCIATION, et al.,
Defendants-Appellees Cross-Appellants.
 Nos. 83-4290, 83-4348.
 United States Court of Appeals,
Fifth Circuit.
 June 28, 1984.
 
 Wyllie & Fraiche, Danielle M. Lombardo, Donna D. Fraiche, Metairie, La., for plaintiffs-appellants.
 Suzanne Cochran, H.H.S., Frank V. Smith, III, Charlene M. Seifert, Dallas, Tex., Evans, Feist, Auer, Keene & Thompson, Frances O. Allen, George H. Mills, Jr., Joseph S. Cage, Jr., U.S. Atty., Dosite H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for Blue Cross.
 Wilkinson & Carmody, Shreveport, La., Howard B. Gist, Jr., Alexander, La., for St. Francis Cabrini.
 Joseph S. Cage, Jr., U.S. Atty., Shreveport, Dosite H. Perkins, Jr., Asst. U.S. Atty., Suzanne Cochran, Dept. of H.H.S., Charlene M. DeBolt Seifert, Dallas, Tex., Evans, Feist, Auer, Keene & Thompson, Frances O. Allen, George H. Mills, Jr., Shreveport, La., for Heckler.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before RUBIN, JOHNSON and DAVIS, Circuit Judges.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 In these cases the plaintiffs, providers of medical services, seek injunctive and declaratory relief against the North Louisiana Medical Review Association, a peer review organization established under the Medicare Act, and various officials associated with it (collectively referred to as NLMRA). Plaintiffs seek to prevent defendants from taking certain action which would hamper plaintiffs' ability to receive payment for services rendered to medicare patients. We affirm the district court's dismissal of plaintiffs' suit.
 
 I. BACKGROUND
 
 2
 Congress, in response to concern with the increasing costs of the Medicare program, amended the Medicare Act in 1972 to establish local review boards termed Professional Standards Review Organizations (PSRO).[1] These review boards were given broad responsibility to determine whether medical services rendered were necessary and whether the bills submitted for treatment by health care providers were reasonable.[2]
 
 
 3
 Congress was sensitive to the health care providers' objections to review of the necessity and reasonableness of their services by non-medical bureaucrats. Under the statutory and regulatory scheme each PSRO includes a substantial number of local physicians familiar with local conditions relating to health care.
 
 
 4
 As one would expect, certain medical services, such as those determined to be unnecessary, are excluded from coverage under the Medicare Act. Under certain circumstances, however, the health provider is paid for such excluded services under a "waiver of liability" (WOL) presumption. The statute and PSRO guidelines direct that certain claims, even for uncovered services, are to be paid if both the beneficiary and the provider of the uncovered services are unaware that the services are not covered and if they reasonably could not have known that the services were not covered.[3] In order to avoid the administrative nightmare of resolving the question of knowledge of non-coverage by the beneficiary and provider on each claim for uncovered services, a policy decision was made that a lack of knowledge of non-coverage by the beneficiary and the provider would be presumed. This is referred to in the guidelines as the "waiver of liability presumption" (WOL presumption).
 
 
 5
 If certain, specified irregularities surface in the bills and claims documents submitted for payment of services, the PSRO is authorized by the regulations to recommend to the fiscal intermediary that the WOL presumption be rebutted or revoked. If the recommendation is accepted, the provider cannot rely on the WOL presumption to establish lack of knowledge that services were not covered; the provider must show affirmatively on a claim by claim basis that neither he nor the beneficiary knew or reasonably could have known that the Act provided no coverage for the service in question. Under the statutory and regulatory scheme, an appeal can be taken from the denial of a claim; however, no appeal lies to review the decision of the PSRO and the fiscal intermediary to rebut or revoke the WOL presumption.[4]
 
 II. FACTS
 
 6
 The defendant North Louisiana Medical Review Association is designated as the PSRO for Area 1 of Louisiana; its fiscal intermediary is the Blue Cross of Louisiana (Blue Cross). On October 27, 1981, NLMRA wrote to Rapides Regional Medical Center and thirteen other hospitals (Rapides) and complained that Rapides had submitted claims for ancillary medical services that either were not furnished to a patient or were furnished without a physician's order. The letter informed Rapides that the described services violated NLMRA standards and that after December 1, 1981, it would not approve as medically necessary the described ancillary services. NLMRA in the same letter warned Rapides that if this "questionable pattern of care" was not corrected by December 1, 1981, NLMRA would recommend to Blue Cross that Rapides' WOL presumption be revoked. On November 30, 1981, NLMRA followed up its earlier letter by writing to seven of the hospitals in an effort to determine whether appropriate corrective action would be taken. Rapides then filed suit no. 83-4348 seeking to enjoin the NLMRA from taking the threatened action. The district judge initially issued a temporary restraining order restraining NLMRA from rebutting or revoking the hospital's WOL presumption. On December 2, 1981, following a hearing, the district court found that the TRO had become moot and gave the hospitals time within which to amend their complaint. Rapides, in its amended complaint, alleged that NLMRA was conducting harassing, improper and unproductive reviews of its ancilliary services and sought declaratory and injunctive relief, as well as a writ of mandamus. Rapides contended that it was entitled to the relief sought because of the violation of its due process rights and also because the NLMRA violated various provisions of the Medicare Act. On May 9, 1983, the district court dismissed Rapides' claims without prejudice on grounds that Rapides had not exhausted the administrative remedies provided under 42 U.S.C. Sec. 1320c-8.
 
 
 7
 Following an exchange of letters between the NLMRA and Dr. Joseph M. Smith, a practicing physiatrist in the Department of Physical Medicine and Rehabilitation at Lincoln General Hospital (Lincoln), the NLMRA recommended to Blue Cross that it rebut Smith's waiver of liability presumption. The NLMRA made this recommendation based upon its determination that an unacceptable number of Dr. Smith's claims had been denied. Blue Cross rejected the recommendation because no express NLMRA determination had been made that Smith's pattern of care had been found questionable. On June 10, 1981, NLMRA again recommended to Blue Cross that Smith's WOL presumption be revoked. Blue Cross determined that earlier NLMRA letters to Smith adequately informed him that his pattern of care was questionable and that Smith had knowledge that such services were not covered. On June 15, 1981, Blue Cross revoked Smith's WOL presumption. Several of Smith's claims for services were later denied; however, these denials were reversed on appeal.
 
 
 8
 Smith and Lincoln filed suit no. 82-4290 seeking declaratory and injunctive relief on grounds that they had been deprived of property without due process of law. Smith and Lincoln also sought a writ of mandamus ordering NLMRA to reinstate Smith's presumption. The district court dismissed the complaint without prejudice for plaintiffs' failure to exhaust remedies.
 
 III. DISCUSSION
 A. JURISDICTION
 
 9
 Congress imposed particular limitations on the jurisdiction of federal courts to review disputes arising under the Social Security Act.
 
 
 10
 The Medicare Act (42 U.S.C. Sec. 1395ii) incorporates into its statutory framework 42 U.S.C. Sec. 405(h), which provides:
 
 
 11
 The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were a party to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.
 
 
 12
 The review provided under the Act is limited, except in unusual circumstances, to review of a final decision of the Secretary denying a specific claim.[5]
 
 
 13
 Plaintiffs assert that because they allege constitutional claims, federal question and mandamus jurisdiction are available, despite the limitations of Sec. 405(h).
 
 
 14
 A similar argument was addressed by the Supreme Court in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In Salfi, plaintiffs brought a class action for benefits under the Social Security Act, claiming that benefits under the Social Security Act had been unconstitutionally withheld because of the invalidity of a nine-month duration of relationship requirement to collect certain types of benefits. The question presented was whether federal courts had jurisdiction under 28 U.S.C. Sec. 1331 to adjudicate the asserted constitutional deprivation of the plaintiff class. The Court concluded that because of the preclusive language of sections 405(g) and (h), federal courts had no jurisdiction because plaintiff's claim, notwithstanding the claim for constitutional violation, arose under the Social Security Act. The court noted that it would be:
 
 
 15
 ... fruitless to contend that appellee's claim is one which does not arise under the Constitution ... but it is just as fruitless to argue that this action does not also arise under the Social Security Act. For not only is it social security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions." Weinberger v. Salfi, 422 U.S. at 760-61, 95 S.Ct. at 2464.
 
 
 16
 Since Salfi, numerous circuit courts, including this court, have struggled with the question of jurisdiction over controversies related to the Social Security and Medicare Acts.[6]
 
 
 17
 The Court in Ringer v. Heckler, --- U.S. ----, 104 S.Ct. 2013, 80 L.Ed.2d --- (1984) reaffirmed Salfi by holding that the characterization of an irregularity as procedural does not prevent it from arising under the Medicare Act. The Supreme Court has not yet decided, however, whether mandamus jurisdiction is available for a claim arising under the Act if no other avenue of relief is provided under the Act.
 
 
 18
 Even if Sec. 1361 jurisdiction may be exercised in a proper case arising under the Medicare Act, mandamus is not an appropriate remedy in this case. Mandamus may issue only when these elements are present: (1) the plaintiff must have a clear right to relief; (2) the defendant must have a clear duty to act; and (3) there must be no other available remedy. Carter v. Seamans, 411 F.2d 767, 783 (5th Cir.1969) cert. denied, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970), Jones v. Alexander, 609 F.2d 778, 781 (5th Cir.) cert. denied, 449 U.S. 832, 101 S.Ct. 100, 66 L.Ed.2d 37 (1980).
 
 
 19
 Because of the insubstantial nature of plaintiff's claims, as demonstrated below, the exceptional circumstances which warrant exercise of the extraordinary writ of mandamus are clearly lacking. See Cervoni v. Secretary of Health, Ed. & Welfare, 581 F.2d at 1019-20.
 
 B. THE CONSTITUTIONAL CLAIM
 
 20
 The only colorable deprivation of a constitutional right alleged is the deprivation of property without due process of law. The question presented is whether plaintiffs have alleged the deprivation of a constitutionally protected property interest; more particularly, should the WOL presumption be accorded the status of property. One aspect of the nature of the interest required was addressed in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971): "To have a property interest in a benefit a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577, 92 S.Ct. at 2709.
 
 
 21
 The important question to be resolved therefore is a determination of the nature of the interest plaintiffs have in the WOL presumption.
 
 
 22
 The benefit created by Medicare's statutory and regulatory scheme is not the WOL or the WOL presumption; the benefit created is the payment of necessary expenses for certain covered medical expenses. The United States has assumed no blanket responsibility to compensate physicians or hospitals for services they render to patients. Instead, the government has assumed the obligation to compensate providers of the medical service to the extent those services are covered by the Act. The revocation of plaintiffs' WOL presumption does not automatically result in the loss of any claims for services covered under the Act. It simply means, as to claims for services not covered by the Act, the provider must affirmatively establish both his and the patient's lack of knowledge of such non-coverage. As we noted earlier, Dr. Smith has received payment on all claims initially denied because of a rebuttal or revocation of the WOL presumption. Rapides does not assert that they have had claims denied as a result of actions by NLMRA. Neither plaintiff may ultimately be denied payment on their claims despite the revocation of the WOL presumption.
 
 
 23
 Although the reach of the Constitution is broad, it does not cover every trivial interest. Raymon v. Alvord Independent School District, 639 F.2d 257, 258 (5th Cir.1981); Zeller v. Donegal School District Board of Education, 517 F.2d 600, 606-7 (3d Cir.1975) (en banc). The loss of the WOL presumption is clearly inconvenient to a health provider; the nature of that interest, however, does not rise to the level of a protected property interest. Put another way, a provider has no reasonable expectation or entitlement to be paid on a bad claim, that is a claim not covered under the Act. Appellants therefore have made out no colorable claim of a Constitutional deprivation.
 
 C. STATE ACTION BY THE NLMRA
 
 24
 Smith also presented a claim under 42 U.S.C. Sec. 1983 claiming that the NLMRA was a state entity and that the members of that PSRO were state officials.[7]
 
 
 25
 We conclude that Smith's section 1983 claim must fall because the NLMRA is a federal, not a state, entity.
 
 
 26
 The nexus test established by the Supreme Court finds state action if "there is a sufficiently close nexus between the [government] and the challenged action of the regulated entity so that the action of the latter may be fairly said to be that of the [government] itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477, 484 (1974). The government must put its weight of authority behind the entity's actions so as to place its "imprimatur" on those actions. Id. at 357, 95 S.Ct. at 456. Government regulation of the entity or the government's acquiescence or approval of the entity's acts are insufficient to create government action. Id. at 350, 354, 95 S.Ct. at 453, 455. Becnel v. City Stores Co., 675 F.2d 731, 732 (5th Cir.1982). The government "normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]." Blum v. Yaresky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534, 546 (1982).
 
 
 27
 Applying these principles, we conclude that a PSRO is a federal entity. Taylor v. Flint Osteopathic Hosp., Inc., 561 F.Supp. 1152 (E.D.Mich.1983). As a PSRO, the NLMRA was created by federal statute. 42 U.S.C. Secs. 1320c-1 et seq., 42 C.F.R. Secs. 101.1 et seq. It performs a critical federal function of monitoring costs of services provided under the Act for which it is paid by the United States. Taylor v. Flint Osteopathic Hosp., Inc., 561 F.Supp. at 1159; Parker v. Department of Health, Education and Welfare, 478 F.Supp. 1156, 1157 (M.D.Tenn.1979). By its statutory, regulatory and internal guidelines, the federal government actively regulates, directs and encourages the NLMRA's action. Furthermore, NLMRA's final determination is subject only to review by the federal agency and federal courts. 42 U.S.C. Sec. 1320c-4; Greater New York Hospital Ass'n. v. Blum, 634 F.2d 668, 670 (2d Cir.1980); Taylor v. Flint Osteopathic Hosp., 561 F.Supp. at 1159. In view of the lack of any nexus between the state of Louisiana and the NLMRA, Smith's section 1983 claims must fail.
 
 IV. CONCLUSION
 
 28
 We agree with the district court that this case should be dismissed. We find no failure to exhaust remedies, however, because no remedy has been provided to review the disputed NLMRA decisions. It is unnecessary to decide whether mandamus jurisdiction should be exercised in a meritorious constitutional claim related to the Medicare Act where no other avenue is available to review the controversy. Such a case is not before us today. Plaintiffs lack a property interest in the WOL presumption and the revocation of the presumption does not violate rights secured to plaintiffs under the Fifth Amendment.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 42 U.S.C. Secs. 1320c-1, 1320c-2
 
 
 [2]
 42 U.S.C. Secs. 1320c-2, 1320c-3(a)(1)(A), 1320c-3(a)(1)(B) and 1320c-3(a)(1)(C)
 
 
 [3]
 The Medicare Act's waiver of liability presumption has been extended to providers under a PSRO's jurisdiction by a memorandum of understanding
 
 
 [4]
 Although the district court's dismissal was based on the plaintiff's failure to exhaust administrative remedies, under our analysis of the case, no procedure for review of the disputed decision by the PSRO is provided by the Act; consequently, any consideration of exhaustion is inapplicable. Certainly if no remedy is provided, plaintiffs cannot be penalized for failing to exhaust a non-existent remedy
 
 
 [5]
 Section 405(g) provides, in relevant part:
 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States....
 Although the Medicare Act incorporates section 405(g), it provides a further limitation that an administrative hearing is unavailable for claims under $100 and judicial review is unavailable for claims under $1,000. See 42 U.S.C. Sec. 1395ff(b)(2).
 
 
 [6]
 Our en banc decision in Dr. John T. McDonald Foundation v. Califano, 571 F.2d 328 (5th Cir.1978) amply demonstrates the complexity of the jurisdictional problem where Congress has precluded judicial review of the controversy before the court. For a discussion of this problem by other circuit courts see: Ringer v. Heckler, 697 F.2d 1291 (9th Cir.1982) rev'd, --- U.S. ----, 104 S.Ct. 2013, 8 L.Ed.2d --- (1984); Cervoni v. Secretary of Health, Ed. & Welfare, 581 F.2d 1010 (1st Cir.1978); Association of Am. Medical Colleges v. Califano, 569 F.2d 101 (D.C.Cir.1977); White v. Mathews, 559 F.2d 852 (2d Cir.1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); St. Louis University v. Blue Cross Hospital Service, 537 F.2d 283 (8th Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976)
 
 
 [7]
 At oral argument, the parties were not in agreement as to the characterization of the NLMRA. At various times it was defined as a completely private entity, a state agency and a federal agency